**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Harold SMITH, Defendant-Appellant.**

**No. 74–1823.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 2, 1975.

Decided Dec. 31, 1975.

Rodney G. Snow, Asst. U. S. Atty. (Ramon M. Child, U. S. Atty., on the brief), for plaintiff-appellee.

Craig S. Cook, Salt Lake City, Utah, for defendant-appellant.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Charles Harold Smith was charged by information with the possession of 592 blank money orders of the United States Post Office Department with an intent to convert said money orders to his own use or gain, or the use or gain of another, knowing said money orders to have been stolen, in violation of 18 U.S.C. § 500. Pursuant to Fed.R.Crim.P. 41 Smith filed prior to trial a motion to suppress the use at trial of the money orders which formed the basis for the prosecution. The motion to suppress was not heard prior to trial as provided for by Rule 12(e) and at the trial the money orders in question were received into evidence over objection. Smith was convicted, and on appeal his conviction was reversed. *See United States v. Smith*, 495 F.2d 668 (10th Cir. 1974).

Upon reversal, the case was remanded with directions that an evidentiary hearing on the motion to suppress be held *prior* to retrial, with "due regard" to be given the holdings in *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); and *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), regarding Smith's "standing" to challenge the search of the automobile which led to the seizure of the money orders. For general background facts out of which this prosecution arises, see our earlier opinion. 495 F.2d 668, 669. Additional background facts will only be developed as is deemed necessary to an understanding of this opinion.

Upon remand the trial court held an evidentiary hearing on the motion to suppress prior to retrial. At that hearing the two police officers who conducted the search of the automobile testified, as did the defendant Smith. Testimony was also taken from one Joseph Thomas Palmasano, in whose automobile the money orders were seized. The trial court denied the motion to suppress and in connection therewith found and concluded as follows: (1) Smith had no sub-

stantial proprietary or possessory interest in the money orders; (2) Smith had no proprietary or possessory interest in the automobile from which the money orders were taken; (3) Smith had abandoned the money orders by "dumping the money orders into an automobile belonging to one who was almost a total stranger"; (4) that Smith accordingly lacked standing to challenge the search of the Palmasano vehicle, since he, Smith, was not an aggrieved person within the meaning of Rule 41(e); and (5), alternatively, that the police officers had probable cause under exigent circumstances which justified the limited search which in turn revealed the presence of the money orders in the Palmasano car.

At the second trial of this matter the money orders were again received into evidence and Smith was again convicted. He now appeals for a second time and his primary argument is that the seizure of the money orders was unlawful and that he has standing to challenge the search and seizure.

█ In passing on the correctness of the trial court's denial of Smith's motion to suppress, we are not limited to a consideration of just the evidence introduced at the hearing on the motion to suppress. In addition thereto, we may also consider the evidence adduced at trial, even though such may not have been presented at the pretrial suppression hearing. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Canieso,* 470 F.2d 1224 (2d Cir. 1972); *Rocha v. United States,* 387 F.2d 1019 (9th Cir. 1968), *cert. denied,* 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968); and *Rent v. United States,* 209 F.2d 893 (5th Cir. 1954). At this point the immediate facts as gleaned from the entire record and leading up to the questioned search should be developed.

Smith, the defendant, was being evicted from his living quarters in the early morning hours by his landlady. Smith and his belongings were literally on the sidewalk. Smith put a number of his belongings in his own automobile, but he needed assistance. In his effort to get help Smith called a nearby bar, where he was apparently well known, and the bartender sent Palmasano to help. Palmasano, who was unacquainted with Smith, arrived shortly for the purpose of assisting Smith. Smith apparently had a stereo which would not fit in either his car or the Palmasano vehicle. So, Palmasano left the scene in search of additional help.

About this time a local Salt Lake City police officer, who had been previously called to the scene by the landlady, had furher conversation with Smith. The police officer in question had at that time just been advised by the landlady that Smith "might" have some stolen money orders in his possession. In this regard there was some question as to whether the landlady had simply referred to money orders, or "stolen" money orders. In any event the police officer thereupon inquired of Smith as to whether he, Smith, had anything in his car that didn't belong to him. Smith replied that he did not. The officer then asked if he could look in the vehicle, and Smith refused to permit such. Smith's vehicle at that time carried an expired brake and light certificate, and there was some statement by the officer to the effect that the vehicle could be impounded and Smith issued a citation. The vehicle was not impounded, however, and the officer ostensibly left.

Actually, the officer only removed himself some 80 yards to a church parking lot where he continued to watch Smith's movements through binoculars. Smith's testimony was that he was uncertain as to whether the police officer had completely left the scene. In any event, the officer testified that he observed Smith take an object from his car and stuff it inside his shirt. According to the officer, Smith then proceeded across the street in the direction of a Seven-Eleven store, where, according to Smith's own testimony, he intended to throw the object, which ultimately

turned out to be the money orders, into a trash can.

It was about this point in time that Palmasano and a friend returned to the scene. Palmasano parked his car some 30 to 40 feet directly in front of Smith's vehicle. The friend parked his vehicle somewhere to the rear of Smith's vehicle. Upon seeing Palmasano return, Smith changed his mind and as Palmasano left his vehicle and walked back to Smith's car, Smith walked over to the unoccupied Palmasano vehicle and threw a brown sack which contained the money orders through the open car window onto the front seat of Palmasano's car. In thus disposing of the money orders Smith testified that he "just wanted them away from me" and in answer to a question as to whether he intended to abandon the money orders he replied "yes."

In our earlier opinion in connection with the question as to whether Smith had standing to contest the seizure of the brown sack containing the stolen money orders from the Palmasano automobile, we commented as follows:

> Jones v. United States, 362 U.S. 257, 262–265 [80 S.Ct. 725, 4 L.Ed.2d 697] suggests three alternatives which may be used to establish standing, (1) substantial proprietary or possessory interest in the thing seized, (2) a similar interest in the premises searched, and (3) legitimate presence on the premises searched. Of these, only (1) has application here. Defendant says that he has "automatic" standing to contest the seizure because evidence of a possessory interest at the time of seizure both convicts and confers standing.

█ In our view, the foregoing observation has equal applicability to the record as made by the trial court upon remand, i. e., only (1) has application. There is some suggestion that Smith had a proprietary or possessory interest in the Palmasano vehicle. Such is not the case. Palmasano, a stranger to Smith, responded to Smith's call for help at the direction of the bartender in the nearby bar. Smith's belongings, however, were placed in Smith's vehicle, not Palmasano's. Apparently a problem arose concerning Smith's stereo set, which because of its size would not fit in either car. It was this fact which caused Palmasano to leave the scene in an effort to find someone with a bigger car. And it was at this point in time that Smith determined to get rid of the money orders. He took the money orders from his car and, hiding them under his shirt, headed for a trash can at the Seven-Eleven store located across the street. When Palmasano returned and left his unattended car parked some 30 to 40 feet in front of Smith's parked car, Smith had a change of heart and decided to get rid of the money orders by throwing them on the front seat of the Palmasano vehicle. Though there is some suggestion that Smith had Palmasano's permission to put his personal belongings in the latter's automobile, the fact is that he did not do so. And when Smith threw the money orders into Palmasano's unoccupied automobile, Smith was then in the process, as he himself described it, of getting the money orders "away from him." Under all the circumstances the relationship between Palmasano and Smith was not such as to indicate that Smith had a *substantial* interest in the premises searched, i. e., the Palmasano car. Any possible interest was at the most very slight. Hence, the second alternative in the quotation from our earlier opinion as set forth above is still inapplicable.

█ That leaves only (1) to consider. Does the record show that Smith had a substantial proprietary or possessory interest in the thing seized at the time of the seizure? We think it does not. On the matter of standing, Smith argues that he had "automatic standing" under *Jones*. The Government suggests that under *Brown* there is now doubt about the continued validity of the automatic standing rule of *Jones*. We need not here decide whether in view of *Simmons* the automatic standing rule is still a viable one, inasmuch as the evidence clearly establishes that as of the time of the

seizure Smith had abandoned the money orders. So the instant case differs from *Jones* where the defendant was in possession of the seized evidence at the time of the contested seizure. Here, having abandoned the money orders, Smith had no proprietary or possessory interest whatsoever in the money orders as of the moment they were seized by the police. In this regard Smith's own testimony clearly indicates that he intended to abandon the money orders, and his actions bear out his mental intent to rid himself of that which he feared might get him in trouble. The trial court found abandonment, and the state of the record is such as to support such finding. And of course there is nothing unlawful in the Government's appropriation of abandoned property. *See Abel v. United States*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Having no proprietary or possessory interest in the money orders at the time of their seizure, Smith has no standing, automatic or otherwise, to test the validity of such seizure.

In avoiding the "automatic standing" issue in *Brown*, the Supreme Court noted that, unlike *Jones*, "The Government's case . . . does not depend on petitioners' possession of the seized evidence at the time of the contested search and seizure." The same observation can be made in the instant case, namely, the Government's case against Smith does not depend upon Smith's possession of the stolen money orders at the time such were taken from Palmasano's automobile. As a matter of fact, the "possession" relied on by the Government in the instant case to support the conviction is necessarily "possession" occurring prior to Smith's abandonment of the money orders, because a finding of "abandonment" connotes a lack of possession. Having determined, then, that Smith is without standing, we need not here be concerned with whether the officer's search, if indeed it be a search, was lawful, i. e., probable cause coupled with exigent circumstances.

■ Counsel also asserts as error the instructions given the jury concerning the essential elements of the crime charged. As we read the statute, whoever receives or possesses a money order of the Post Office Department, knowing it to have been stolen, with the intent to convert it "to his own use or gain," or to the "use and gain of another," violates 18 U.S.C. § 500. In certain of his initial instructions to the jury the trial judge referred to an "intent to convert to his own use," and omitted the words "or gain." However, later on in his instructions when the trial judge enumerated the essential elements of the crime charged, he used the language of the statute, i. e., with the specific intent to convert said money orders "to his own use or gain or to the use and gain of another." In our view, the jury was fully instructed as to the essential elements of the crime charged. The omission in one or two instances of the two words "or gain" from the phrase "use or gain" is under the circumstances not reversible error.

Judgment affirmed.