**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Beverly Ann POPEJOY,**
**Defendant-Appellant.**

**No. 77–1160.**

United States Court of Appeals, Tenth Circuit.

Submitted March 13, 1978.

Decided June 16, 1978.

See also 578 F.2d 1352.

Joel H. Greenstein and Wilfred R. Mann, Boulder, Colo., for defendant-appellant.

John E. Green, Acting U. S. Atty., and Ronny D. Pyle, Asst. U. S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Before HOLLOWAY, DOYLE and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal from the conviction and sentence under 18 U.S.C. § 3 [1] of defendant-appellant Beverly Ann Popejoy as an accessory after the fact on a charge that she did

---

1. Defendant Popejoy was given an 18 months' sentence as an accessory after the fact under 18 U.S.C. § 3 which provides in part as follows:

§ 3. Accessory after the fact

Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his ap-

receive, relieve, comfort and assist Kenneth Ray Johnston and Huey V. Griffin in order to hinder or prevent their apprehension, trial or punishment for bank robbery.[2] Defendant Popejoy appeals, claiming error mainly in the admission in evidence of statements obtained from her by F.B.I. agents during interrogation while she was in custody of Oklahoma City police following her allegedly unlawful arrest by the police.

■ Different issues and facts relating to the appeal of defendant Johnston are treated in our separate opinion which affirms his conviction. On this appeal from defendant Popejoy's conviction we are bound to consider the evidence in the light most favorable to the Government, *United States v. Twilligear*, 460 F.2d 79, 81–82 (10th Cir.), and thus viewed there was evidence tending to show the following circumstances:

The Bank of Newcastle in Newcastle, Oklahoma was robbed at about noon on October 20, 1976, by two armed robbers. They took $9,466 from the bank and fled in an old General Motors car. At 5:00 p. m. the day of the robbery, Officer Hogue of the Oklahoma City Police Department was advised that the Bank of Newcastle had been robbed, was given a description of the suspects, and was told that the robbers left the bank in a 1968 Oldsmobile, white over light blue or aqua, bearing tag number UWG 733, California. Later that evening, spotting a car matching the description of the vehicle used in the robbery, he arrested Johnston and Popejoy and transported them to Oklahoma City Police headquarters.

Shortly after 11:00 p. m., while defendant Popejoy was still in custody of the Oklahoma City police, an F.B.I. agent read her a *Miranda* statement of her constitutional rights and then questioned her about the robbery. During this interrogation Popejoy said that Johnston lived with her, that they had spent most of the day when the robbery occurred together at her home except for some short periods when Johnston was gone from her residence, and that Johnston had borrowed the car in which they were arrested from a man she knew as Tommy.

After this interrogation on the night of October 20 defendant Popejoy was released from custody. She consented to a search of her home by the F.B.I. agents and was taken to her home by them. They found nothing connecting defendant Popejoy or her home with the robbery. (IV R. 452–53). The agents left and she spent the night at her home.

The next day defendant Popejoy was arrested again at her home at 1:30 p. m. by the police and placed in jail. Shortly after 3:00 p. m. she was questioned again at the Oklahoma City Police Department headquarters by F.B.I. agents. Agent Hawkins testified that she was in custody of the police when the agents arrived. (VI R. 455). Her constitutional rights were explained to her again. At that time she denied any participation in the robbery. When asked if she did not have knowledge of the robbery she replied: "I was not there." (VI R. 431). During this interrogation she said that the car in which she had been arrested on October 20 with Johnston had been borrowed by them from a friend known to her as Ted Griffin.

The statements of defendant Popejoy on both October 20 and 21 were related by F.B.I. agent Hawkins during the trial, without objection. (VI R. 429–31). It is their admission which defendant Popejoy claims was prejudicial error in that they were allegedly the fruits of an unlawful arrest

---

prehension, trial or punishment, is an accessory after the fact.

2.  Johnston and Griffin were both convicted of bank robbery and placing in jeopardy the lives of two bank officers during the robbery of the Bank of Newcastle, Newcastle, Oklahoma, in violation of 18 U.S.C. § 2113(a) and (d). Defendant Johnston appealed and his conviction has been affirmed. *United States v. Johnston*, 578 F.2d 1352 (10 Cir., No. 77–1158, filed June 16, 1978).

without probable cause, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, *inter alia*.

The Government response is essentially that defendant Popejoy was not arrested or jailed, but rather lawfully detained and interviewed only as a material witness on the day of the robbery and interviewed again the next afternoon, citing Oklahoma statutes dealing with material witnesses, 22 O.S.A. § 270, *et seq.*, and § 719; that the intrusion to this extent was reasonable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; that defendant Popejoy's statements were given voluntarily so as to remove any taint even if there was an unlawful arrest, citing *United States v. Fallon*, 457 F.2d 15 (10th Cir.); and that defendant Popejoy made no objection to the statements at trial, which indicated that she and her counsel did not feel there was any impropriety in the detention or in the admission of the inculpatory statements.

Defendant Popejoy replies that the Oklahoma statutes on material witnesses are obviously inapposite, that there is no question but that she was restrained of her liberty and under an unlawful arrest without probable cause, that the prejudicial statements obtained were not sufficiently removed from the unlawful arrest to be free of the taint as in *Fallon*, and that despite lack of an objection at trial the

constitutional wrong is plain error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, which we must notice.

*First*, we must agree that the argument made under *Brown* is substantial.[3] There is no doubt on this record that defendant Popejoy was placed under arrest and restrained of her liberty by the Oklahoma City police at the time that the questioning by the F.B.I. agents occurred. Her first statement was obtained the same evening of her arrest during interrogation about 11:08 p. m. to 11:34 p. m. (V R. 340, 344–45; VI R. 449–51). The Oklahoma statutes relied on as showing that she was only being held as a material witness in no way apply to these circumstances and were not being followed. No grounds were demonstrated for the warrantless arrest of defendant Popejoy.[4] Thus the circumstances were such that a substantial Fourth Amendment evidentiary objection might have been made under *Wong Sun* and *Brown*. See *Stevens v. Wilson*, 534 F.2d 867, 871–72 (10th Cir.).

At trial defendant Popejoy's counsel thoroughly cross-examined the F.B.I. agent who testified about defendant Popejoy's statements. He developed the circumstances relating to her being in custody and her interrogation. (VI R. 449–458). Furthermore, circumstances surrounding defendant Popejoy's arrest were brought out during the arresting officer's cross-examination by her

---

**3.** Even though the allegedly unlawful arrest was made by city police officers without any participation by federal officers, constitutional objections, under *Wong Sun* and *Brown*, to the statements obtained by the federal agents could have been properly made in this federal prosecution. See *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828; *Elkins v. United States*, 364 U.S. 206, 222–23, 80 S.Ct. 1437, 4 L.Ed.2d 1669; *United States v. Hall*, 488 F.2d 193 (9th Cir.); *United States v. Rael*, 467 F.2d 333 (10th Cir.), cert. denied, 410 U.S. 956, 93 S.Ct. 1429, 35 L.Ed.2d 690. And it makes no difference that the allegedly tainted evidence was verbal and

not physical. *Wong Sun v. United States*, supra, 371 U.S. at 486, 83 S.Ct. 407.

**4.** As discussed below, despite the apparent basis for claiming that Popejoy's arrests were unlawful, the assertion was not made, by an objection to admission in evidence of defendant Popejoy's statements. Of course, without any hearing focusing on the arrests we cannot be sure that all the facts are shown which bear on the lawfulness of her arrests. Nor can we be confident that all the facts for application of the *Wong Sun* test are developed as to whether her statements were "come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 371 U.S. at 488, 83 S.Ct. at 417.

counsel. (V R. 343–45).[5] There was, however, no objection made by defendant Popejoy to the admission of the testimony by the F.B.I. agent relating to the statements made by her.

■ Where such an objection to the admission of evidence is not made at trial ordinarily the issue may not be raised on appeal, unless plain error affecting substantial rights is involved. See Rule 103(a) and (d) F.R.Evid.; *Marshall v. United States,* 409 F.2d 925, 926–27 (9th Cir.). As noted, circumstances were developed at trial which might have formed the basis for such an objection and *Wong Sun* and *Brown* had been decided for some time. Hence defendant Popejoy should not be heard on her belated objection, unless plain error is shown. In this regard defendant Popejoy says that the admission of the statements was plain and prejudicial error under Rule 52(b) F.R.Crim.P., and that being of constitutional dimensions the stricter test of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, applies and cannot be met. She invokes the *Chapman* holding that ". . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24, 87 S.Ct. at 828.

■ However, some constitutional objections can be waived by failure to make a timely assertion of them in the trial court. E. g., *Brown v. Crouse,* 425 F.2d 305,. 309 (10th Cir.); *Isaacs v. United States,* 283 F.2d 587, 589 (10th Cir.). We believe that evidentiary objections with a constitutional footing can be waived in a case like this by failure to object, particularly where the basic factual and legal predicate for them was available. Compare Rule 12(b)(3), F.R. Crim.P. And where evidence is admitted without such an objection we should not apply the stricter *Chapman* harmless error test which governs when a recognized constitutional infringement has occurred. See *Brown v. United States,* 411 U.S. 223, 226, 230–32, 93 S.Ct. 1565, 36 L.Ed.2d 208. In such a case as is before us we feel that the Rule 52(b) standard applies and that we should consider such an evidentiary objection which was not made at trial only if we are convinced that there was an error of great import affecting substantial rights. See Rule 52(b), F.R.Crim.P.; *United States v. Hazeltine,* 444 F.2d 1382, 1384 (10th Cir.); *Lucas v. United States,* 355 F.2d 245, 248 (10th Cir.), cert. denied, 384 U.S. 977, 86 S.Ct. 1873, 16 L.Ed.2d 687.

In assessing whether there was such a plain error affecting substantial rights we note that the Government presented a strong case against defendant Popejoy, although it was largely circumstantial. There was testimony that defendant Johnston was living with Popejoy, that the two of them had stayed overnight with defendant Griffin in Los Angeles about two weeks before the robbery, that about 25 minutes after the robbery two men were seen at Popejoy's house shifting things from Popejoy's Pontiac to an Oldsmobile, and that Popejoy then came out of the house and drove the Oldsmobile away, accompanied by the two men. Another witness who lived next door to Popejoy testified that between 11:00 a. m. and noon or between noon and 1:00 p. m. she saw Johnston and another man exchange something from one car to the other and then just the two men drove away. (V R. 280–83, 360–65).

At about 2:00 p. m. (about two hours after the robbery), Popejoy and Johnston appeared at an office in Oklahoma City to pay some money to one Buck Kelly. Defendant Popejoy took the money, in tens and twenties, from her purse and gave it to an office employee who testified that she

**5.** Concerning the second arrest, the parties have stipulated that at 1:30 p. m., October 21, 1976, Oklahoma City police officers arrested appellant Popejoy at her home and placed her in jail and that at 1:10 p. m. on October 22, 1976, the appellant Popejoy was released to the custody of the United States Marshal. (See Stipulation filed March 23, 1978). The circumstances surrounding the second arrest (that of October 21) are not developed in the record.

believed it was $5,000. Kelly testified that he counted the money, which was in twenty dollar bills and some ten dollar bills, totaling $5,000. Later that day Kelly deposited $4,500 of the money in the Guaranty National Bank in Oklahoma City. The following day $500 in twenty dollar bills corresponding in serial numbers with numbers on a list of "bait bills" taken from the bank of Newcastle was found among the receipts of the Guaranty National Bank.[6] (V R. 324–25).

There was also proof tending to show that at 5:00 p. m. on the day of the robbery, Johnston and Popejoy arrived back at Popejoy's home and Johnston was seen removing a pistol from under the dash of the car. Mary Hyman, the owner of a steakhouse in Oklahoma City, testified that in the early morning on October 21 she received a call from someone who said she was "Beverly." Mrs. Hyman thought this was Beverly Popejoy whom she knew as a customer. The caller asked that she go up to room 12 of a motel in the same block and wake up the man in that room. Mrs. Hyman was busy and could not go. Later the same person called again and asked that if she could not get anyone up in room 12, to knock at room seven. Mrs. Hyman sent her son. The motel owner testified that defendant Griffin was registered in room 12.

■ The case against defendant Popejoy was strong, although mainly circumstantial. And, as noted, the factual basis for the constitutional objection to her statements was revealed at trial and still no such objection was made. We are not persuaded that in these circumstances there was any grave error affecting substantial rights and therefore reject the untimely objection.[7]

*Second*, defendant Popejoy argues that prejudicial error occurred when objectionable opinion evidence relating to her knowledge of the robbery was admitted over her objection. The testimony came from the F.B.I. agent who was asked his "impression of the words the defendant spoke to you at that time . . ." The court overruled the objection, referring to his previous ruling that if an impression was sought within Rule 803(1), F.R.Evid., it would be admitted; if the question was an attempt to interpret the mind of the declarant, the objection would be sustained.

The F.B.I. agent then replied that his "impression was that she was, in fact, knowledgeable of the robbery." (VI R. 463). Defendant's counsel immediately objected and moved for a mistrial. The objection was sustained and the jury was admonished to disregard the question and the response, but the motion for a mistrial was denied.

■ The statement was clearly incompetent as opinion evidence on a crucial element of the offense—defendant Popejoy's knowledge of the other parties' participation in the robbery. See *United States v. Press*, 336 F.2d 1003, 1013 (2d Cir.), cert. denied, 379 U.S. 965, 85 S.Ct. 658, 13 L.Ed.2d 559 and 379 U.S. 973, 85 S.Ct. 658, 13 L.Ed.2d 559. We must agree that the statement of the agent's impression was inadmissible. It would have been far better if the Government had avoided bringing it in. However, there was a prompt rejection of the statement by the court and an admonition to the jury to disregard the question and the response. And, as noted, the Government's case was strong and the defense weak. In view of all these circum-

---

**6.** The "bait bill" list did not, however, contain the series year of the money. Bills of different series do contain the same serial number, but we note that these 25 twenty dollar bills all corresponded exactly as to the ten characters given for each bill on the bait list.

**7.** We are satisfied that the Government's direct and circumstantial evidence made a strong case covering the essential elements of the ac-

cessory after the fact offense: that the robbery was committed, that the accessory knew of the participation by particular principals in the robbery, and that with such knowledge she assisted them in order to hinder or prevent their apprehension, trial or punishment. See *United States v. Eaton*, 485 F.2d 102, 108 (10th Cir.).

**1352**

stances we are convinced that the error did not influence the jury or had but very slight effect so that the judgment should stand. See *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557.

We have considered the remaining points made by the defendant Popejoy but feel they require no further discussion. We find no reversible error and the judgment is, accordingly, -

AFFIRMED.