**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alan D. AMON, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gary W. DUNBAR, Defendant-Appellant.**

**Nos. 80–1856, 80–1859.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 17, 1981.

Decided June 15, 1981.

Rehearing Denied March 9, 1982.

Charles H. Torres, Asst. U. S. Atty., Denver, Colo. (Joseph Dolan, U. S. Atty., and John R. Barksdale, Asst. U. S. Atty., Denver, Colo., were with him on the briefs), for plaintiff-appellee.

Cecil A. Hartman, Englewood, Colo., for defendants-appellants.

Before HOLLOWAY, McKAY and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Both defendants were convicted in separate non-jury trials of filing false withholding allowance certificates in violation of 26 U.S.C. § 7205.[1] Defendant-appellant Alan D. Amon appeals from his conviction on each count of a two-count information charging him with violating § 7205.[2] Defendant-appellant Gary W. Dunbar appeals from his conviction on one count of a two-count information charging him with violating § 7205.[3] These direct appeals were consolidated because the issues raised in each are basically the same.

As grounds for reversal the defendants essentially argue that the trial court erred: (1) in refusing to dismiss the informations due to premature filing by the Government; (2) in denying a motion to dismiss for lack of jurisdiction; (3) in refusing to dismiss the informations due to selective prosecution; (4) in admitting documents in evidence in violation of their constitutional rights under the Fourth and Fifth Amendments and their statutory rights under the Privacy Act; and (5) in admitting evidence concerning the amount of wages actually earned by them after they had filed their withholding allowance certificates. Defendant Dunbar also claims that the trial

---

1. 26 U.S.C. § 7205 states in part that

    Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information, or who willfully fails to supply information thereunder which would require an increase in the tax to be withheld under section 3402, shall ... upon conviction thereof, be fined not more than $500, or imprisoned not more than 1 year, or both.

2. Amon was sentenced to one (1) year of confinement on Count 1 of the information. Imposition of sentence was suspended as to Count 2 and the defendant placed on probation for two (2) years to begin when he was released from confinement under Count 1. (I R. 19).

3. Dunbar was sentenced to one (1) year of confinement on Count 2 of the information. (I R. 17).

court erred in denying his motion for discovery.

## I

Because neither defendant challenges the sufficiency of the evidence supporting their convictions, only a brief statement of the facts is necessary.

The evidence adduced at trial against defendant Amon shows that on February 23, 1979, Amon submitted to his employer, Cherne Construction Company, an Employee's Withholding Allowance Certificate, form W–4, claiming an exemption from the withholding requirements and certifying that he incurred no liability for federal income tax for 1978 and that he expected to incur no federal tax liability for 1979. On June 15, 1979, Amon submitted another W–4 form to a different employer, Peabody Process Systems, again claiming an exemption from the withholding requirements and certifying that he incurred no federal tax liability for 1978 and that he did not expect to incur any tax liability for 1979. (II R. 16–20, 22–24, 27). There was expert testimony and other evidence tending to show that these claims were false. (II R. 26–33).

The record shows that on February 22, 1979, Amon signed and filed his 1978 income tax return which indicated a tax liability of $1,621.00 for 1978. Thus at the time he submitted both W–4 forms to his employers it could be inferred that he knew that he had incurred federal tax liability for 1978 and that he was not entitled to an exemption from the withholding requirements. Moreover, when he filed his second W–4 form in June 1979 it could be inferred that he knew that he had already been working for almost six months in 1979 and thus could reasonably anticipate a tax liability for that year. (II R. 28, 32–33, 50). The evidence was sufficient to support the inference that Amon knowingly, voluntarily, and intentionally supplied his employers with the false information contained in the

W–4 forms, beyond a reasonable doubt. (II R. 10–11, 42–44, 47–48).

The evidence relating to defendant Dunbar shows that in February 1979 Dunbar signed and filed his 1978 federal income tax return which indicated that approximately $3,902 had been withheld from his wages for taxes and that his federal income tax liability for 1978 was $3,611. (II R. 44, 55–56, 62–65). The evidence further shows that in January 1979 Dunbar submitted to his employer, Ebasco Services, a W–4 form claiming an exemption from the withholding requirements. In July 1979 Dunbar and other Ebasco employees who were claiming an exemption from the withholding requirements received a form letter from the Internal Revenue Service (IRS) which outlined the legal requirements for claiming such an exemption. After a short lay-off in the summer of 1979 Dunbar was rehired by Ebasco in August 1979. At that time he filed another W–4 form with Ebasco, claiming an exemption from the withholding requirements and certifying that he incurred no federal tax liability for 1978 and anticipated no tax liability for 1979. (II R. 15, 21–24, 46, 64–68). It was this latter W–4 filing for which Dunbar was convicted.

There was expert testimony and other evidence tending to show that the statements in the latter W–4 form submitted by Dunbar to his employer in August 1979 were false. (II R. 44, 46–48). Moreover the evidence was sufficient to support the inference that Dunbar knowingly, voluntarily, and intentionally supplied his employer with false information, knowing that he had incurred a federal tax liability for 1978, beyond a reasonable doubt. (II R. 65–68).

## II

■ After criminal charges were filed against them, each defendant submitted to the IRS refund claims for all taxes paid by them in 1978 and 1979.[4] Both defendants filed *pro se* pretrial motions arguing that

---

4. The separate informations charging Amon and Dunbar were filed by the Government on February 20, 1980. Amon's refund claims were received by the IRS on March 31, 1980. (II R.

the criminal charges should be dismissed because they were entitled to have their civil refund claims properly adjudicated before the Government could validly charge and prove criminal activity on their part. The district court's denial of these motions is challenged by both defendants in these appeals.

The refund claims were submitted after the criminal charges were filed and long after the acts of the defendants which form the basis of the criminal charges against them. Resolution of any civil claim for a refund of taxes already paid is clearly collateral, and not essential to the disposition of the criminal charges. *See United States v. Peister,* 631 F.2d 658, 664–65 (10th Cir.); *see also United States v. Hinderman,* 625 F.2d 994, 995 (10th Cir.) (per curiam). The criminal charges are primarily concerned with whether the defendants willfully supplied information on W-4 forms that they knew at the time was false. *United States v. Peister, supra.* We hold that the Government did not need to resolve the pending refund matters before pursuing criminal charges against the defendants.

### III

■ Defendants argue that the district court, "under the rules of criminal procedure, has no jurisdiction over matters arising under the Internal Revenue Code." The argument is mainly premised on assertions that the Internal Revenue Code is unintelligible and that it was not shown that defendants intended to or did harm society. (Brief of Appellant Amon at 4; Brief of Appellant Dunbar at 5). The argument is frivolous and without merit. *See* 18 U.S.C. § 3231; *United States v. Callow,* Nos. 79–2197 & 80–1068, slip op. at 3–4 (10th Cir. May 22, 1980, unpublished). *United States v. Brown,* 600 F.2d 248, 259 (10th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172.

### IV

Prior to trial both defendants moved to dismiss the criminal charges pending against them on the grounds that the Government's prosecution of them was unconstitutionally selective. These motions were denied by the district court. Following their trials, defendants renewed the motions. After evidentiary hearings the district judge denied the motions.

On appeal, both defendants claim that the trial court erred by failing to dismiss the informations due to selective prosecution. More specifically they argue that the evidence is clear that many people continue to file for exemptions from the withholding requirement even though they are not legally entitled to claim them, that only a selected few are being prosecuted, and that those individuals being prosecuted are selected because they have exercised their First Amendment right of free speech or have been singled-out as illegal tax protestors by the IRS. With respect to their own cases, they claim that they were selected for prosecution by the Government because they were "outspoken." (Brief of Appellant Amon at 5–7; Brief of Appellant Dunbar at 7–9).

■ It is fundamental that "[s]electivity in the enforcement of criminal laws is . . . subject to constitutional constraints." *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755. Nevertheless, " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446. "Moreover, there is a presumption that prosecution for

---

6, 45–46). There was testimony that Dunbar's refund claims were never received by the IRS,

but he testified at trial that he mailed them on April 12, 1980. (II R. 41, 71).

violation of the criminal law is in good faith," *United States v. Bennett,* 539 F.2d 45, 54 (10th Cir.), *cert. denied,* 429 U.S. 925, 927 S.Ct. 327, 50 L.Ed.2d 293; *accord, Barton v. Malley,* 626 F.2d 151, 155 (10th Cir.). Here the district judges, after evidentiary hearings in both cases, found that no unconstitutionally selective prosecution of the defendants had occurred. We are satisfied that the findings are supported by the record and are not clearly erroneous and thus should not be set aside.[5] *See United States v. Ganter,* 436 F.2d 364, 368 (7th Cir.).

In both cases there are particular findings in the district judges' rulings which we should discuss. At the conclusion of Amon's evidentiary hearing, the judge specifically found that the selection of Amon for prosecution "was in compliance with the directives and the policies" of the IRS, that he saw no "pattern or practice of attempting to silence Mr. Amon on any given occasion where he chooses to exercise his First Amendment rights by the institution of investigation, arrest or prosecution", but that Amon was "selected for prosecution because he is an active and outspoken protestor." (II Supp. R. 30–32). After enunciating the proper two-prong test for establishing an unconstitutionally selective prosecution,[6]

the district court concluded that it was unable to determine if Amon had been "singled out" for prosecution since the statute of limitations had not yet run for others who were similarly situated.[7] Citing *United States v. Stout,* 601 F.2d 325 (7th Cir.), the district court did hold, however, that "the defendant's status as an active protestor was insufficient to establish selective prosecution," and that no "invidious" discrimination occurs when, as here, the IRS prosecutes individuals "for actions which they take in failing to comply with the tax laws where the transgential [sic] [tangential] effect is to dissuade others from engaging in that kind of tax protest." The court concluded that (II Supp. R. 32):

> Accordingly, I am going to deny the motion to dismiss even though I find that the defendant has been selected for prosecution because he is an active and outspoken protestor. That will present the issue of law squarely, but I do think that *United States v. Stout* is the existing law on the subject.

We agree with the trial court's ruling. Defendant Amon's asserted claim of a First Amendment infringement is not sufficient. Merely showing that the Government elected, under established IRS directives, to

---

5. The evidence presented at both evidentiary hearings was similar. Defendant Dunbar testified that he filed for an exemption from the withholding requirement as a form of protest against the way the Government was being operated and that he discussed his views with other employees. (I Supp. R. 8–9). Referring to the Government's support of a foreign war, Dunbar said that his refusal was "not just not to pay a tax. It is to tell them that what they do with our money was wrong." (*Id.* at 9).

Defendant Amon testified that he was very outspoken in his views concerning the tax collection system and noncompliance with tax laws. (II Supp. R. 5–6, 9). Further evidence was presented at both evidentiary hearings tending to show that the IRS has a formal policy of prosecuting individuals who are outspoken in their criticism of federal income tax laws.

6. Relying on *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.), the district court held that Amon had the burden of proving (1) that he had been singled out for prosecution while oth-

ers similarly situated had not generally been proceeded against for the type of conduct forming the basis of the charge against him and (2) that the Government's discriminatory selection of him for prosecution has been invidious or in bad faith and has been based on impermissible considerations such as race, religion or the desire to prevent the exercise of constitutional rights. (II Supp. R. 29, 31–32). This test has been recognized in our prior decisions. *See, e. g., Barton v. Malley, supra,* 626 F.2d at 155.

7. There was testimony by Amon and stipulated exhibits showing a substantial number of other "exempt" filings where Amon had worked, and he testified that he knew of no other prosecutions in those groups. (II Supp. R. 7–9; Def. Exhs. A and B). The Government developed the fact that similar prosecutions had occurred in the case of Dunbar and one Lyle Bert. (II Supp. R. 10–11). In the Amon record it was not established where Dunbar and Bert were employed or prosecuted.

prosecute an individual because he was vocal in opposing voluntary compliance with the federal income tax law, without also establishing that others similarly situated were not prosecuted and that the prosecution was based on racial, religious or other impermissible considerations, does not demonstrate an unconstitutionally selective prosecution. *See United States v. Rickman,* 638 F.2d 182, 183 (10th Cir.); *United States v. Stout,* 601 F.2d 325, 328 (7th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 481, 62 L.Ed.2d 406; *United States v. Catlett,* 584 F.2d 864, 866–867 (8th Cir.); *United States v. Johnson, supra,* 577 F.2d at 1309. We uphold the trial court's ruling on the ground that the defendant Amon did not satisfy the second requirement—that the prosecution was based on racial, religious or other impermissible considerations.[7a]

In the Dunbar case the district judge reached a similar conclusion without making all the findings stated in the Amon case.[8] The judge said that it would be anomalous if an individual were immunized from prosecution merely because his protest is against the very law which he is violating or because the Government has not prose-

cuted everyone who has violated the same law. (I Supp. R. 16–17). We must agree again that the showing made did not establish an unconstitutionally selective prosecution. *See United States v. Rickman, supra,* 638 F.2d at 183.

In sum, in neither case can we agree that an unconstitutionally selective prosecution was demonstrated.

## V

The defendants argue that the district court committed "gross error" by permitting the Government to introduce in evidence certain documents which were required by law to be filed by the defendants with their employers and the Government.[9] They claim that the Government's use of these documents to prove the case against them violated their constitutional rights under the Fourth and Fifth Amendments and their statutory rights under the Privacy Act, 5 U.S.C. § 552a, because the documents contained no *Miranda* warnings and no warnings required under the Privacy Act which would indicate that the documents could be used against them in a criminal

---

**7a.** See note 6, *supra.* We express no opinion on the reasoning of the trial court noted earlier that the judge was unable to determine if Amon had been singled out for prosecution because the statute of limitations had not yet run for others who were similarly situated. This presents a question which we need not reach in the Amon or Dunbar cases.

**8.** In passing on the correctness of the trial court's conclusion that an unconstitutionally selective prosecution of the defendant did not occur, this court may consider any evidence properly presented at trial, even though that evidence might not have been introduced at the post-trial evidentiary hearing. *Cf. United States v. Smith,* 527 F.2d 692, 694 (10th Cir.). Hence, we are noting here some other matters brought out at trial which have some pertinence to the selective prosecution issue.

As the district court noted at trial, there was undisputed testimony from Dunbar's employer that a third of its employees, approximately 400 persons, were claiming an exemption from the withholding requirements. (II R. 18, 31, 81; I Supp. R. 6–7). Additionally Dunbar testified that "everybody" in his craft was filing for exempt status. (II R. 63). The district court

found this evidence sufficient to establish a reasonable doubt as to whether Dunbar "acted in knowing and willful violation of a known legal duty" with respect to the W-4 form he submitted to his employer in January, 1979. (II R. 81).

As noted in Part I, *supra,* the Ebasco employees who were claiming exemptions from the withholding requirement received a letter from the IRS outlining the legal prerequisites for properly claiming an exemption. The trial testimony of Ebasco's representative indicates that after receiving this letter "quite a few people" resubmitted W-4 forms and dropped their claims for exemptions. (II R. 21). The evidence presented at trial clearly shows that after receiving the IRS letter Dunbar continued to claim an exemption from the withholding requirements. Dunbar stated at trial that he personally knew only one other person from his craft, one Lyle Bert, who was being prosecuted. (II R. 63).

**9.** These documents were identified at argument as being the various W-4 and federal income tax forms in evidence.

case. (Brief of Appellant Amon at 8; Brief of Appellant Dunbar at 9–10).

■ Initially we note that the defendants failed to object at trial to the admission of these documents on the grounds now asserted.[10] Ordinarily where an objection to the admission of evidence is not made at trial the issue may not be raised on appeal unless there is plain error involved which affects the substantial rights of the defendant. *See, e. g., United States v. Popejoy,* 578 F.2d 1346, 1350 (10th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243; *United States v. Stevens,* 452 F.2d 633, 635 (10th Cir.).

■ In any event *Miranda* warnings are not constitutionally required where, as here, the information requested by the Government on the tax forms is not obtained from the defendants in a custodial setting. *See, e. g., Beckwith v. United States,* 425 U.S. 341, 345–47, 96 S.Ct. 1612, 1615-1617, 48 L.Ed.2d 1; *United States v. Brown, supra,* 600 F.2d at 252 & n.3. It is also clear that defendants' Fourth Amendment rights have not been violated by the Government since they could not legitimately claim an expectation of privacy in documents which they submitted voluntarily to the IRS and their employers. *See Couch v. United States,* 409 U.S. 322, 335–36, 93 S.Ct. 611, 619–20, 34 L.Ed.2d 548; *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Moreover, as to the W-4's there was no violation of defendants' rights under the Privacy Act of 1974, 5 U.S.C.

§ 552a, since the instructions accompanying the forms submitted by the defendants contain the necessary admonition.[11] *See United States v. Rickman, supra,* 638 F.2d at 183. There is no record evidence to indicate whether information forms relating to the tax returns or other documents containing a Privacy Act notice were received by defendants, but the objection is nevertheless unavailable since it was not made at trial, as noted above.

## VI

■ Defendants' final contention concerns the admission in evidence of testimony and documents relating to the total amount of wages earned by them during the 1979 tax year. Specifically they argue that evidence concerning the amount of wages earned after they submitted their W-4 forms to their employers is irrelevant to a determination of whether they knew at the time they submitted the forms that they would have a tax liability for 1979. (Brief of Appellant Amon at 8–9; Brief of Appellant Dunbar at 10).

There was expert testimony indicating that an individual must be able to certify that he had no tax liability for the previous tax year *and* that he anticipated no tax liability for the current year in order to be entitled to claim the exemption. Evidence concerning the amount of wages earned after the submission of the W-4 form to the employer is clearly relevant within the meaning of Rule 401, Fed.R.Evid., since it tends to establish a motive for falsely

---

10. At oral argument counsel for the defendants-appellants stated that the district court did not permit him to make a specific objection to the documents being offered by the Government. At argument Government counsel did refer to testimony concerning the Privacy Act having been given at trial. After reviewing the record in both cases, we must disagree with the contentions that a specific objection was prevented by the trial judge and that the substance of the objection was made. Defense counsel was provided ample opportunity to raise an objection to the Government's use of the documents now challenged. (II R. 28, 39, 54 (Dunbar); II R. 8–9, 18–19, 23–24 (Amon)).

Only during Amon's trial did defense counsel object to the Government's use of these documents. The objection, however, did not relate to the constitutional and Privacy Act claims now asserted, but instead related to the contention discussed in Part VI, infra, of this opinion.

11. Amon admitted at trial that he had read the Privacy Act notice concerning the W-4 forms. (II R. 37–38, 41–42). Dunbar admitted receiving a letter from IRS, and the letter was accompanied by the W-4 instruction form with the Privacy Act notice. (Pl. Ex. 3; II R. 65–66).

claiming an exemption from the withholding requirements. Moreover, such evidence tends to rebut the taxpayer's claim that he could not reasonably anticipate tax liability for the current year. Consequently the trial court did not err in admitting such evidence.

Even assuming, however, that the trial court erred in admitting the evidence, we think that it would be harmless error within the meaning of Rule 52, Fed.R.Crim.P. Here there was sufficient evidence in the record, as we noted in Part I, *supra*, showing that each defendant incurred a tax liability for 1978 thereby precluding any legal claim for an exemption from the withholding requirements. Accordingly this evidentiary contention lacks any logical force.

## VII

We have examined the remaining appellate contentions of the defendants and find that they are without merit and require no further discussion. We are satisfied that no reversible error is demonstrated and the judgments are

AFFIRMED.

LOGAN, Circuit Judge, concurring:

The remarks of Judge McKay in dissent impel me to comment upon my support of that part of the majority opinion rejecting the selective prosecution argument of the defendants. Focusing on the trial court's finding that Amon was "selected for prosecution because he is an active and outspoken protestor," Judge McKay apparently discredits the court's ultimate finding that the IRS evidenced "no pattern or practice of attempting to silence Mr. Amon on any given occasion where he [chose] to exercise his First Amendment rights by the institution of investigation, arrest or prosecution"; he concludes, contrary to the trial court's express determination, that the IRS selectively prosecuted Amon in order to shut him up. Adhering to the clearly erroneous standard, I am unwilling to discount the trial court's findings of fact.

I agree that citizens must be permitted to speak out against laws they regard as unjust or undesirable. If one merely called for disobedience of the tax laws, there being no crime in merely urging disobedience, I would apply the clear and present danger test, and in all probability hold that the threat of substantial and serious danger to organized government is not sufficient to warrant suppression of free speech. *See Herndon v. Lowry*, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1936). But this is not such a case. These tax protestors and others like them are individuals who not only urge change in our tax laws and disobedience, but also state clearly and publicly that they have violated the law by refusing to file tax returns, filing essentially blank tax returns, or claiming unlawful exemptions from taxes. As part of this admission they urge others to follow their example. Thus, they become public symbols of opposition to the law and admitted lawbreakers who, under Judge McKay's view, could not be prosecuted unless all who similarly break the law are prosecuted, or, if prosecutorial resources are insufficient, are selected for prosecution by a random or neutral process.

This precise situation apparently has not been before the Supreme Court, although the Court has upheld the constitutionality of a law punishing one who encourages commission of a crime. *Fox v. Washington*, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 (1915). The Supreme Court has also indicated that advocacy of violations of the law may be prohibited when "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969).

The Eighth Circuit has considered and rejected exactly the selective prosecution argument asserted here, apparently involving the same IRS manual. In doing so it declared,

"While the decision to prosecute an individual cannot be made in retaliation for

his exercise of his first amendment right to protest government war and tax policies, the prosecution of those protestors who publicly and with attendant publicity assert an alleged personal privilege not to pay taxes as part of their protest is not selection on an impermissible basis.

"... We noted [in *United States v. Ojala*, 544 F.2d 940 (8th Cir. 1976)], that selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate and prosecute every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media."

*United States v. Catlett*, 584 F.2d 864, 867–68 (8th Cir. 1978). In *United States v. Moss*, 604 F.2d 569 (8th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980), that circuit stated,

"Freeman alleges that his speeches '[challenge] the constitutionality of the income tax laws as ... enforced in this country ...,' that he 'espouses a political cause aimed at changing the tax law in the United States ...,' and that his actions were 'absolutely protected' by the first amendment, any conviction founded on the present record being 'outside the ... perview of ... the laws of this country.'

"Freeman's objection was answered by this court in *United States v. Buttorff*, 572 F.2d 619 (8th Cir. 1978), on facts similar to those here, 572 F.2d at 623–24: '[T]he Supreme Court has distinguished between speech which merely advocates law violation and speech which incites imminent lawless activity. *See Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). The former is protected; the latter is not.

" 'Although the speeches here do not incite the type of imminent lawless activity referred to in criminal syndicalism

cases, the defendants did go beyond mere advocacy of tax reform. They explained how to avoid withholding and their speeches and explanations incited several individuals to activity that violated federal law and had the potential of substantially hindering the administration of the revenue. This speech is not entitled to first amendment protection and, as discussed above, was sufficient action to constitute aiding and abetting the filing of false or fraudulent withholding forms.' "

604 F.2d at 571.

A Fifth Circuit case, *United States v. Johnson*, 577 F.2d 1304 (5th Cir. 1978), considered the selective prosecution argument in tax protestor cases in considerable detail. On the key point urged before us, it declared,

" '[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' *Oyler v. Boles, supra*, 368 U.S. at 456, 82 S.Ct. at 506. *See also Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Selection, moreover, is not impermissible solely because it focuses upon those most vocal in their opposition to the law which they are accused of violating. The fact that tax protestors are vigorously prosecuted for violation of the tax laws demonstrates nothing more than a legitimate interest in punishing flagrant violators and deterring violations by others."

577 F.2d at 1309.

The Seventh Circuit has also spoken on this issue.

"It is not improper for the Government to concentrate on those violations which appear most flagrant. *United States v. Stout*, 601 F.2d 325, 328 (7th Cir. 1979). As this Court recently stated in that case: 'Aggressively displaying one's antipathy to the * * * system or daring the government to enforce it does not create immunity from, or a defense to, prosecution.' "

*United States v. Heilman*, 614 F.2d 1133, 1139 (7th Cir.), *cert. denied*, 447 U.S. 922,

100 S.Ct. 3014, 65 L.Ed.2d 1114 (1980). Also,

> "[a]ssuming that the decision to indict Peskin and press for trial was based in part on consideration of his political prominence, this is not an impermissible basis for selection. It makes good sense to prosecute those who will receive the media's attention. Publication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law."

*United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976).

Our own circuit has previously set forth the same principles in reviewing a case involving violations of a zoning ordinance.

> "Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. '[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Selective enforcement without malicious intent may be justified when a test case is needed to clarify a doubtful law, *Mackay Telegraph Co. v. Little Rock*, 250 U.S. 94, 100, 39 S.Ct. 428, 63 L.Ed. 863 (1919), or when officials seek to prosecute a particularly egregious violation and thereby deter other violators. *People v. Utica Daw's Drug Co.*, 16 A.D.2d 12, 225 N.Y.S.2d 128, 4 A.L.R.3d 393 (1962). Appellee informs us that many of the other violators called as witnesses by appellant have ceased their illegal practices as a result of the experience."

*Cook v. City of Price*, 566 F.2d 699, 701 (10th Cir. 1977). *See United States v. Rickman*, 638 F.2d 182 (10th Cir. 1980) (tax protestor case).

I am in agreement with the expressions in the quotations I have set out. I think Judge Holloway's opinion handles the selective prosecution issue at least as favorably toward defendants as they are entitled, and I agree with his handling of the other issues in the appeal. I therefore join in that opinion.

McKAY, Circuit Judge, dissenting:

Based on an adequate record, the trial court held:

> Accordingly, I am going to deny the motion to dismiss even though *I find that the defendant has been selected for prosecution because he is an active and outspoken protestor.*

Supp. Record, vol. 2, at 32 (emphasis added). In reaching this conclusion, the court referred to Defendant's Exhibit D, a letter from the IRS to a tax protester in a situation similar to defendant's:

> Secondly, your return was selected for examination because of your past publicized activities in the illegal tax protest movement . . . .

The court also cited an IRS Manual Supplement, Defendant's Exhibit G, which is captioned "Examination and Investigation of Illegal Tax Protest-type Activities." The instructions are replete with directions to proceed against "protesters." In its declaration of purpose, the document states, "The procedures in this Supplement are not directed towards suppressing dissent or prosecuting individuals because they are critical of, or are identified with groups critical of, the tax system or government policies." IRS Manual Supplement, January 10, 1979, at 1. The overall tenor of the document, however, belies this statement of purpose. It makes clear that IRS activities with regard to tax protesters extend well beyond the manifestly permissible policy of using admissions of a crime against the criminal, to the suspect policy of punishing political protestors—or in other words, of punishing citizens for exercising a right which is front and center to the first amendment. Indeed, if the objective of the IRS were only to prosecute the more serious or frequent violators of the tax laws, the word "protester" would be irrelevant. As the trial court found, the object of the selectivity is to shut up the "outspoken."

The test for determining whether a prosecution is unconstitutionally selective is two-pronged. To support a selective prosecution claim a defendant bears a heavy burden of establishing, at least prima facie (1) that he has been singled out for prosecution, and (2) that the selectivity for prosecution was invidious or in bad faith, that is, based on such impermissible considerations as race, religion, or the desire to prevent or inhibit his exercise of such constitutional rights as free speech. *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). *See also Oyler v. Boles*, 368 U.S. 448, 454–56, 82 S.Ct. 501, 504–06, 7 L.Ed.2d 446 (1962); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). In other words, challengers must show both selectivity and proscribed motivation.

A reading of the trial court's findings in context makes clear that the trial court was struggling with the implementation of this test. It has not been easy for this court to give substance to the broad statement of the rules regarding selective prosecution. While it may be that in context the trial court was merely saying that defendant was in fact not singled out for prosecution, the trial court undeniably found that if defendant was singled out the motivation was that "he is an active and outspoken protestor." The majority opinion is simply mistaken in concluding that the trial court ruled that the defendant had not satisfied the second leg of the test—*i. e.*, had not shown that the prosecution was motivated by the desire to inhibit his exercise of free speech.[1] The trial court's express finding is exactly to the contrary—"I find that the defendant has been selected for prosecution *because* he is an active and *outspoken* protestor." Supp. Record, vol. 2, at 32 (emphasis added). In fact, a close reading of the trial court's struggle with the issues indicates that its doubt arose not from the IRS's motivation but rather from an erroneous belief that it was necessary for the defendant not only to show that he was the only one so far who had been prosecuted

but also that the statute of limitations had run as to all other persons similarly situated. That test for determining selectivity is not only erroneous but an impossible test for anyone to meet. The majority is not prepared to hold that that test should in fact be applied. The net effects of the majority's handling of this issue are (1) a contradiction of the trial court's findings without any discussion of the insufficiency of the record to support them, and (2) the establishment of a rule which permits the government through selective prosecution to chill the exercise of a citizen's right to be "outspoken" in protest against government policies.

The trial court's confusion apparently arises from a failure to understand what kinds of proof can show selective prosecution. The trial court apparently believed that the only way selectivity could be shown was by circumstantial evidence—*i. e.*, that all other possible violators had been ignored while the defendant had been prosecuted. While that is one method of showing selectivity, it is certainly not the only method. Selectivity also may be shown by direct evidence, as apparently was done, and was accepted by the trial court as being done, in this case. That is, it may be shown by what has been colloquially called the "smoking pistol" method, an outright admission. Proof adduced in this case showed that the IRS had a deliberate policy of *selecting* and *attempting to silence* those who were "outspoken protesters" against the tax laws. If it were shown by direct evidence that such a policy had been applied to defendant—and apparently the trial court found that it had—then the first leg of the test is satisfied without requiring defendant to conduct his own nationwide investigation of tax violations to identify all possible defendants and then to show that none of them had been prosecuted.

In the present case, the first and second legs of the test are satisfied by the same proof. Here, the IRS declared (and the trial court believed) that it intended to se-

---

1. The principal difference between Judge Logan and me is not that we emphasize different trial court findings, but that he would affirm a criminal conviction based on conflicting find-

ings by the trial court on the key issue. I would not. The trial court should have an opportunity to clear up its findings under proper guidelines.

lect and silence outspoken tax protesters. Thus, both the fact of selectivity and its motivation—to silence the outspoken—are proved by direct evidence. I find it impossible to believe that the majority really means what it is saying. Surely it does not mean that, even though the government declares its intent to select persons for prosecution in order to silence them, the ensuing prosecution does not violate constitutionally protected interests.

It is beyond cavil that this conviction would fall if the trial court had found:

> This defendant has been selected for prosecution *because he is black.*

Nor would there be any doubt if the trial court had found:

> This defendant has been selected for prosecution by the IRS *because he is on the President's political enemies list.*

Similarly, there can be no doubt that this conviction would fall if the trial court had found:

> This defendant has been selected for prosecution because he protested in writing that
>
> > there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible. Everybody does so, rich or poor; and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions. To demand more in the name of morals is mere cant.

*Commissioner v. Newman,* 159 F.2d 848, 850–51 (2d Cir. 1947) (Judge Learned Hand, dissenting) (approved and quoted in *Atlantic Coast Line v. Phillips,* 332 U.S. 168, 173, 67 S.Ct. 1584, 1587, 91 L.Ed. 1977 (1947) (Frankfurter, J., delivering the opinion of the Court)).

Whatever else the trial court may have found, its express language compels the conclusion that it found that this defendant had been selected for prosecution because he was an "outspoken protester." To hold that such selectivity is permissible would make the examples of selectivity I have just set out equally permissible. For first amendment purposes, nothing distinguishes an "outspoken protester" against existing tax laws from one who protests as Judge Hand and Justice Frankfurter have protested.

By definition, each and every instance of selective prosecution which reaches us on appeal involves a person who has allegedly violated some law. Nevertheless, the usual carte blanche of the prosecutor in seeking the convictions of these persons is subject to the requirement that the decision to prosecute not be motivated by factors by which the government cannot constitutionally distinguish one violator from all others. If administratively the government has not the resources to prosecute every violator, if the government therefore must pick and choose from among all violators, it may not do so based on its desire to shut the taxpayer up. However reprehensible may be citizens who object to paying the taxes which make possible an acceptable degree of civilization, the first amendment protects the right to make those objections. If not, then the constitutional guarantee of free speech is illusory.[2] Where, as here, the government seeks to silence a citizen precisely because it detests or fears the citizen's spreading of ideas relating to effective self-government, the Constitution forbids the government action unless the annunciation of those ideas amounts to such a clear and present danger to the security of the Republic that it falls outside the ambit of otherwise protected political speech.

While one could argue that the history of the American Revolution supports a finding that tax protests present a clear and present danger to the Republic, there is no argument before us that they do; no court has so held; and it is doubtful that any court is prepared so to hold. Of course

---

**2.** The right to protest against government policies lies at the core of first amendment values, and the debate in this area of the law is whether commercial speech and recreational speech are entitled to the same constitutional protection as protest. *See, e. g., Valentine v. Chrestensen,* 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) (Constitution imposes no restraints on government restrictions of purely commercial advertising); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346

there is a danger that illegal tax practices will become more widespread if the government fails to strike swiftly and decisively in gagging or at least intimidating the most outspoken tax protesters. However, in a day in which even a computerized search is incapable of tabulating the fractions of a citizen's conduct which government agents now have discretion to charge severally or cumulatively as alleged violations of the law, the necessity of subjecting that discretion to constitutional scrutiny is manifest and certain. It seems a puny enough effort to suggest that the limit on the dangers of unconstitutional discrimination be drawn at least where the hapless citizen can carry his heavy burden to show that he was singled out because (to use the trial court's express language) "he is an active and outspoken protestor."

It is hard to imagine a kind of political protest more consistent with the most cherished traditions of this nation than protest focusing on the laws of taxation. Certainly no form of protest is more American.[3] It was, after all, protest against the Stamp Act which helped set in motion the chain of events which won for this nation its independence from a repressive King George and led to the enshrining in the first amendment of the right to protest.

Since the trial court seemed justifiably confused as to the proper application of the first prong of the test, this case should be remanded to give the trial court an opportunity to reconsider the matter in light of this clarification of the various means by which selectivity may be proved. The possibility that the confusion may have affected the finding that selectivity was motivated by a desire to suppress outspokenness suggests that the trial court not be bound by that finding on remand but rather be permitted to reconsider whether both selectivity and illegal purpose were proved in this case. I would therefore reverse and remand for reconsideration by the trial court.

(1976) (commercial speech *is* within protective ambit of the first amendment); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952) (line between the informing and the entertaining too elusive to be drawn, therefore as general rule "expression by means of motion pictures [must be] included within the free speech and free press guaranty of the First and Fourteenth Amendments."); Jackson & Jeffries, *Commercial Speech: Economic Due Process and the First Amendment*, 65 Va.L.Rev. 1 (1979) (and cases and commentaries discussed therein).

3. Furthermore, tax protest is neither modern nor American in its origin. Many people venerate one who commented on the publicans who collected the taxes in his time.

> And when the Pharisees saw it, they said unto his disciples, Why eateth your Master with publicans and sinners?
> But when Jesus heard that, he said unto them, They that be whole need not a physician, but they that are sick.
> . . . I am not come to call the righteous, but sinners to repentance.

Matthew 9:11–13.