572 P.2d 458

**In re the MARRIAGE OF Mary Jo GOVE, Appellant,**

**and**

**George E. Gove, Appellee.**

**No. 1 CA–CIV 3419.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 17, 1977.

---

Renaud, Cook & Miller, P.A., by Robert H. Renaud, Val A. Cordova, Robert M. Geiger, Phoenix, for appellant.

Allen, McClennen & Fels by James R. Harrison, Phoenix, for appellee.

## OPINION

WREN, Presiding Judge.

In January, 1975 appellee George Gove filed a petition for the dissolution of his marriage with appellant, Mary Jo Gove, and sought custody of their two children. Appellant answered in March, 1975, conceding that the marriage was irretrievably broken and asking for custody of the children. On November 12, 1975, the trial court entered a decree dissolving the marriage and awarding permanent custody of the children to appellee subject to specified visitation rights.

Shortly after filing his petition appellee filed a motion under Rule 35(a), Rules of Civil Procedure, 16 A.R.S., seeking an order requiring appellant and their children to submit to a mental examination. In response appellant asserted that appellee had not shown good cause as required by Rule

35(a).[1] Prior to any ruling by the trial court, appellee filed a subsequent motion accompanied by his affidavit stating that appellant's conduct had raised serious doubts as to her fitness to care for the children. This conduct included frantic and excessive spending, numerous out-of-town trips and an "unusually zealous approach" to her religious activities. In the affidavit, appellee also stated that numerous friends had suggested that his wife was mentally disturbed and that a psychiatrist who previously had substantial contact with appellant had advised him that she was mentally ill and needed psychiatric help. After the court ordered both parties to submit to a mental examination, appellant moved to set aside the order arguing that it violated her personal and religious convictions. Appellee responded, stating that appellant was a Seventh Day Adventist and that the Adventists did not prohibit mental examinations. He pointed out that the Adventist university in Loma Linda, California had a department of psychiatry. Attached to the response was an affidavit from Dr. LaMont Casey, a psychiatrist practicing in Phoenix. Dr. Casey stated in the affidavit that he was an Adventist and was unaware of any church limitation on psychological or psychiatric evaluations. Furthermore, he had seen appellant in his professional capacity, with the last consultation occurring on November 19, 1974, only two months before appellee had filed his petition. Dr. Casey's tentative diagnosis of appellant then was that she was suffering from a manic depressive reaction and that further evaluation was needed to rule out paranoic schizophrenic possibilities.

Following a hearing the court again ordered appellant and appellee to submit to psychiatric examinations. Appellee complied but appellant continued to refuse.

Appellee thereupon filed a motion for sanctions under Rule 37(b), Rules of Civil Procedure, 16 A.R.S. Appellant opposed the motion, again asserting that her religious convictions prevented her from submitting to an examination by a psychologist or psychiatrist. Her opposition included an affidavit from John V. Stevens, president of the Seventh Day Adventist Church State Council. The affidavit supported the sincerity of appellant's beliefs and buttressed her position with references to official writings of the Adventist church. It did not state that appellant's views were shared by Mr. Stevens or other Adventists, but noted that appellant had arrived at her view after studying these writings and that submitting to an examination would violate her conscience. Following a hearing on the motion the court directed that appellant comply with the order within 10 days prior to trial, or she would be prohibited from introducing evidence on the question of her fitness to provide care, custody or control of the children.

The custody hearing took place on October 15, 16 and 20, 1975. Appellant had not submitted to the examination and the order imposing the sanctions was enforced. Appellant introduced evidence at the hearing as to the fitness for custody by way of an offer of proof.

Appellant argues (1) that the imposition of the sanction violated her right to freedom of religion under the Free Exercise Clause of the First Amendment; and (2) that the imposition of the sanctions for refusal to obey the court order was unjust and prevented the court from considering all factors relevant to the best interests of the children under A.R.S. § 25–332.

Our resolution of the second contention renders the first issue moot. However, be-

1. "Rule 35. Physical and mental examination of persons

35(a) Order for examination. When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

cause of the intensity of appellant's argument on the freedom of religion issue, we shall also respond to it.

■ Protections of the First Amendment are extended not only to those religious beliefs held by organized religions but also to individually held religious convictions. *See United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). However, our inquiry must initially be directed to whether appellant's convictions were sincere and rooted in *religious* rather than *personal or secular* considerations; otherwise, the interest protected by the Free Exercise Clause of the First Amendment are not jeopardized. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). In this connection the court below found that appellant's failure to comply with the court order to submit to an examination was based upon "her own individual personal beliefs and not upon any constitutionally protected freedom of religion." We think there was substantial evidence to support this determination.

■ Appellant faced an uphill struggle in demonstrating the sincerity and validity of her expressed religious convictions. Not the least of her problems was the fact that her religious objections to mental examinations were of relatively recent origin. For example, appellant had voiced no objection some years before to seeking help from a psychiatrist for one of her children who had been experiencing some problems. Appellant herself had been consulting a psychiatrist for her own problems as recently as four months before she first raised religious objections to mental examinations. While recently acquired religious views are worthy of protection, the history of a religious belief and the length of time it has been held are factors to be utilized in assessing the sincerity with which it is held. *See Wisconsin v. Yoder*. Nor can it be overlooked that appellant's newly acquired convictions about mental examinations materialized at precisely the same time her mental condition became an issue in the child custody case.

■ Further, the evidence offered by appellant in support of the sincerity and validity of her religious beliefs was less than impressive. Appellant herself never expressed in any way the basis of her religious objections to mental examinations, nor did she attempt to personally attest to the sincerity of her beliefs. She did not offer her own testimony on the matter nor did she even offer her own affidavit. The only evidence presented was the affidavit of a third party who attested to the sincerity and source of her beliefs. Because of its hearsay nature, the affidavit bore little evidentiary weight. A trial court's findings will not generally be disturbed on appeal unless it clearly appears that they were erroneous. *Cavanagh v. Schaefer*, 112 Ariz. 600, 545 P.2d 416 (1976); *E-Z Livin' Mobile Homes, Inc. v. Tommaney*, 27 Ariz.App. 11, 550 P.2d 658 (1976). Appellant placed no competent evidence on the record supporting her First Amendment claims and we therefore sustain the trial court's findings. The Free Exercise Clause of the First Amendment was not involved.

■ Turning to the pivotal issue, even assuming the evidence fully supported appellant's claim under the First Amendment and should not have been excluded, the court order as to custody was fully sustainable. The First Amendment "embraces two concepts,—freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society." *Cantwell v. State of Connecticut*, 310 U.S. 296, 303–304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The existence of a compelling state interest may justify the regulation of the free exercise of religion. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *State v. Whittingham*, 19 Ariz.App. 27, 504 P.2d 950 (1973), *cert. denied*, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974). Thus a Jewish grand jury witness who refuses on religious grounds to testify against another Jew may be held in contempt. *Smilow v. United States*, 465 F.2d 802 (2nd Cir. 1972), *vacated and remanded on other grounds*, 409 U.S. 944, 93 S.Ct. 268, 34 L.Ed.2d 215

(1972) and an autopsy may be ordered over the religious objections of the survivors. *Snyder v. Holy Cross Hospital*, 30 Md.App. 317, 352 A.2d 334 (1976). It has also been held in a situation somewhat analogous to the instant case that a welfare recipient who refuses to submit on religious grounds to a medical examination required by welfare regulations may properly be denied welfare benefits. *Powers v. State Department of Social Welfare*, 208 Kan. 605, 493 P.2d 590 (1972).

The legislature has provided that the mental health of all individuals involved in a custody proceeding is a relevant factor for the court to consider. A.R.S. § 25–332(A)(5). In seeking custody of the children appellant placed her mental condition at issue. *See Atwood v. Atwood*, 550 S.W.2d 465 (Ky.1976); *Roper v. Roper*, 336 So.2d 654 (Fla.App.1976). After Dr. Casey's affidavit regarding appellant's mental condition was filed there was more than good cause for ordering appellant to submit to a mental examination. In a custody case the primary duty of the court is to safeguard the best interests and welfare of the children. *Clifford v. Woodford*, 83 Ariz. 257, 320 P.2d 452 (1957). It is this interest which was compelling here, and which justified the court in ordering a mental examination even in the face of a First Amendment objection. As to the exclusion of other competent evidence, while the imposition of sanctions under Rule 37(b), Rules of Civil Procedure, 16 A.R.S. for failure to comply with discovery orders is within the discretion of the court, *Fleitz v. Van Westrienen*, 114 Ariz. 246, 560 P.2d 430 (App.1977), it is arguable that the sanction of exclusion should never be imposed on evidence relevant to the issue of custody and welfare of minor children. Here, however, the trial court obviously felt that a mental examination of appellant was an absolute prerequisite to any determination as to whether she was qualified to be the custodian of her children. The court did not, as appellant complains, take the children from her as punishment for her religious views. Without the examination it could not be determined whether she was a fit and proper person to have custody of the children. The record fully supports the concern of the court in that regard.

The judgment is affirmed.

EUBANK and JACOBSON, JJ., concur.