760 F.2d 1065
 37 Fair Empl.Prac.Cas. 1652,
37 Empl. Prac. Dec. P 35,222
Royston E. POTTER, Plaintiff-Appellant,
v.
MURRAY CITY, a municipal corporation, Calvin G. Gillen,
individually and in his capacity as Chief of Police of
Murray City, Murray City Civil Service Commission, the
Honorable Scott M. Metheson, as Governor of the State of
Utah, the Honorable David L. Wilkinson, as Attorney General
of the State of Utah, the State of Utah and the United
States of America, Defendants-Appellees.
 No. 84-1813.
 United States Court of Appeals,
Tenth Circuit.
 April 30, 1985.
 
 Dennis V. Haslam (Donald J. Winder, and Kathy A.F. Davis of Winder & Haslam, Salt Lake City, Utah, were also on the brief), for plaintiff-appellant.
 Allan L. Larson (Patrice Arent Mulhern of Snow, Christensen & Martineau, Salt Lake City, Utah, and H. Craig Hall, Murray City Atty., Murray, Utah, were also on the brief), for Murray City, Calvin G. Gillen, and Murray City Civil Service Com'n, defendants-appellees.
 Drake Cutini, Dept. of Justice (Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., Mark H. Gallant, Dept. of Justice, Washington, D.C., were also on the brief), for the U.S., defendant-appellee.
 David L. Wilkinson, Atty. Gen. of The State of Utah, and Paul M. Tinker, Deputy Atty. Gen., and Nicholas E. Hales, Asst. Atty. Gen. of the State of Utah, were on the brief for the State appellees.
 Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and SEAY, District Judge.*
 HOLLOWAY, Chief Judge.
 
 
 1
 In this suit the plaintiff-appellant Royston E. Potter (plaintiff) challenges Utah's proscription against polygamy or plural marriage.[1] His principal claim is that the termination of his employment as a city police officer for the practice of plural marriage violated his rights to the free exercise of his religion and his right to privacy. On cross-motions for summary judgment, the district court ruled in favor of defendants, explaining its reasoning in a scholarly opinion. Potter v. Murray City, 585 F.Supp. 1126 (D.Utah 1984). Plaintiff appeals.
 
 
 2
 * Plaintiff is a former police officer of Murray City, Utah. The City terminated plaintiff's employment after it was learned that he practiced plural marriage. The basis for the discharge was that by his plural marriage plaintiff failed to support, obey and defend Article III of the Constitution of the State of Utah.
 
 
 3
 Plaintiff brought suit under 42 U.S.C. Sec. 1983 and the First and Fourteenth Amendments. Brief of Appellant 1. He sought monetary damages against the City, its Chief of Police, and the Murray City Civil Service Commission. 585 F.Supp. at 1128. He also sought declaratory and injunctive relief against the State of Utah and its Governor and Attorney General to determine that Utah's laws prohibiting plural marriage are invalid and to enjoin their enforcement. Id. Because of the claim that Utah's proscription against plural marriages was mandated by Congress in Utah's Enabling Act as a condition for admission into the Union,[2] the trial court on motion of the State of Utah ordered the United States to be joined as a party.
 
 
 4
 On appeal, plaintiff argues that (1) the portion of Utah's enabling act requiring that Utah forever prohibit polygamy is void by reason of the equal footing doctrine; (2) plaintiff's termination for practicing plural marriage violated his First Amendment right to the free exercise of religion; (3) his termination infringed on his fundamental right of privacy; and (4) his termination violated the constitutional guarantees of due process and equal protection because Utah's laws prohibiting plural marriage have long been in desuetude. Defendants disagree and also assert a number of defenses. We need not reach any of these arguments because we conclude that plaintiff's constitutional claims lack merit.
 
 II
 Analysis
 A. The Equal Footing Doctrine
 
 5
 Plaintiff argues that Utah's Enabling Act providing that polygamy will be forever prohibited violates the equal footing doctrine. Assuming, arguendo, that the Enabling Act does violate the doctrine, it would not entitle plaintiff to any relief.
 
 
 6
 The equal footing doctrine embraces the precept that each state is "equal in power, dignity, and authority," and that a state's sovereign power may not be constitutionally diminished by any conditions in the acts under which the State was admitted to the Union; any conditions imposed by Congress "would not operate to restrict the State's legislative power in respect of any matter which was not plainly within the regulating power of Congress." Coyle v. Smith, 221 U.S. 559, 567, 573, 574, 31 S.Ct. 688, 690, 692, 693, 55 L.Ed. 853 (1911).[3] Assuming, arguendo, that the Enabling Act does violate the equal footing doctrine, as the district court recognized, the State of Utah had
 
 
 7
 full power since statehood to enact or amend in the manner provided by its own laws, any constitutional or statutory provisions dealing with the subject of marriage consistently with the Constitution of the United States as the supreme law of the land. The prohibition of polygamy as provided by its Constitution and laws, continues to be its settled public policy as does its commitment to monogamy as the cornerstone of its regulation of marriage.
 
 
 8
 585 F.Supp. at 1137.
 
 
 9
 We agree with the reasoning of the district court. If the original ban on polygamy and plural marriage was invalid, the State's power to incorporate such provisions in its Constitution and its laws remained. If there was an unlawful coercion in the Enabling Act, the Supreme Court of Utah observed some time ago that there has been no attempt to change the State's laws, "[n]or is such attempt likely." State v. Barlow, 107 Utah 292, 153 P.2d 647, 654 (1944), appeal dismissed for want of substantial federal question, 324 U.S. 829, 65 S.Ct. 916, 89 L.Ed. 1396 (1945) (per curiam).[4]
 
 
 10
 In sum, the plaintiff's claim based on the equal footing doctrine lacks merit.
 
 B. The Free Exercise Clause
 
 11
 In Reynolds v. United States, 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1878), the Supreme Court affirmed a criminal conviction of a Mormon for practicing polygamy and rejected the argument that Congress' prohibition of polygamy violated the defendant's right to the free exercise of religion. Plaintiff argues that Reynolds is no longer controlling because later cases have "in effect" overturned the decision. Brief of Appellant 15. We disagree.
 
 
 12
 Plaintiff principally relies on Wisconsin v. Yoder. 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). There the Supreme Court held that the religious belief of the Amish that their salvation requires life in a church community apart from the world necessitated that they be exempted from a state law requirement that children attend public school beyond the eighth grade. Yoder explained that for a state to compel school attendance beyond the eighth grade when there is a claim that it "interferes with the practice of a legitimate religious belief, it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." Id. 406 U.S. at 214, 92 S.Ct. at 1532. As Chief Justice Burger stated, "[t]he essence of all that has been said and written on the subject [of the Free Exercise Clause] is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." Id. 406 U.S. at 215, 92 S.Ct. at 1533.
 
 
 13
 The parties have stipulated here for the purpose of the motions for summary judgment that plaintiff's practice of plural marriage is the result of a good faith religious belief. 585 F.Supp. at 1129. The plaintiff has made an undisputed showing that his two wives consented to the plural marriage, and that the wives and five children of the marriages receive love and adequate care and attention and do not want for any necessity of life. Plaintiff points out that the State defendants have not presented any empirical evidence that monogamy is superior to polygamy, nor has the Utah legislature ever considered whether its anti-polygamy laws are wise.[5] Hence plaintiff argues that under Yoder, summary judgment should have been entered in his favor rather than for the defendants.[6]
 
 
 14
 We cannot disregard Reynolds, however, because in Yoder and afterwards the Supreme Court has recognized the continued validity of Reynolds. In Yoder, Reynolds was one of four cases that the Court cited in support of the proposition that "[i]t is true that activities of individuals, even when religiously based, are often subject to regulation by the States in the exercise of their undoubted power to promote the health, safety, and general welfare, or the Federal Government in the exercise of its delegated powers." 406 U.S. at 220, 92 S.Ct. at 1535; see also id. 406 U.S. at 230, 92 S.Ct. at 1540. Since Yoder, the Court has said that "[s]tatutes making bigamy a crime surely cut into an individual's freedom to associate, but few today seriously claim such statutes violate the First Amendment or any other constitutional provision." Paris Adult Theatre I v. Slaton, 413 U.S. 49, 68 n. 15, 93 S.Ct. 2628, 2641 n. 15, 37 L.Ed.2d 446 (1973); see also Zablocki v. Redhail, 434 U.S. 374, 392, 98 S.Ct. 673, 684, 54 L.Ed.2d 618 (1978) (Stewart, J., concurring in the judgment) (state may legitimately say that no one who has a living husband or wife can marry); id. 434 U.S. at 399, 98 S.Ct. at 688 (Powell, J., concurring in the judgment) (state has undeniable interest in insuring that its rules of domestic relations reflect widely held values of its people, and state regulation has included bans on incest, bigamy and homosexuality as well as various preconditions to marriage). Moreover, Reynolds has been cited with approval since Yoder. E.g., Bob Jones University v. United States, 461 U.S. 574, 603, 103 S.Ct. 2017, 2034-35, 76 L.Ed.2d 157 (1983); United States v. Lee, 455 U.S. 252, 257, 102 S.Ct. 1051, 1055, 71 L.Ed.2d 127 (1982); see also United States v. Dickens, 695 F.2d 765, 772 (3d Cir.1982), cert. denied, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 and 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983); United States v. Carroll, 567 F.2d 955, 957 (10th Cir.1977) (per curiam).[7]
 
 
 15
 We are in agreement with the district court that the State of Utah
 
 
 16
 beyond the declaration of policy and public interest implicit in the prohibition of polygamy under criminal sanction, has established a vast and convoluted network of other laws clearly establishing its compelling state interest in and commitment to a system of domestic relations based exclusively upon the practice of monogamy as opposed to plural marriage.
 
 
 17
 585 F.Supp. at 1138.[8] Monogamy is inextricably woven into the fabric of our society. It is the bedrock upon which our culture is built. Cf. Zablocki v. Redhail, 434 U.S. 374, 384, 98 S.Ct. 673, 680, 54 L.Ed.2d 618 (1978) (marriage is foundation of family and society; "a bilateral loyalty"). In light of these fundamental values, the State is justified, by a compelling interest, in upholding and enforcing its ban on plural marriage to protect the monogamous marriage relationship.
 
 C. The right to privacy
 
 18
 Plaintiff argues that his constitutional right to privacy prohibits the State of Utah from sanctioning him for entering into a polygamous marriage. Again we disagree.
 
 
 19
 We find no authority for extending the constitutional right of privacy so far that it would protect polygamous marriages.[9] We decline to do so. Cf. Paris Adult Theatre I v. Slaton, 413 U.S. at 68 n. 15, 93 S.Ct. at 2641 n. 15 (few today seriously claim that making bigamy a crime violates the First Amendment or any other constitutional provision).
 
 D. Laws in desuetude
 
 20
 Plaintiff further argues that Utah's laws prohibiting polygamy have fallen into desuetude. He says that there have been fewer than 25 prosecutions in Utah since 1952 for such offenses, that there are at least 5,000 to 10,000 polygamist family members in the State, and that during Chief Gillen's thirty year tenure he had never arrested anyone nor seen anyone arrested or prosecuted for violating Utah's anti-bigamy statute. Brief of Appellant 31; Appellant's Reply Brief 15. Thus he says that invoking laws which have long been in disuse to sanction him is a violation of the constitutional guarantees of due process and equal protection, citing Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and People v. Acme Markets, Inc., 37 N.Y.2d 326, 372 N.Y.S.2d 590, 334 N.E.2d 555 (1975). See also United States v. Elliott, 266 F.Supp. 318, 326 (S.D.N.Y.1967). We disagree.
 
 
 21
 Polygamy has been prohibited in our society since its inception. See Reynolds, 98 U.S. at 164-65. The prohibitions continue in full force today.[10] We cannot agree that the discharge of plaintiff for engaging in bigamy violated any constitutional guarantee. The showing made did not establish the enforcement of a "basically obsolete or an empty law whose function has long since passed." United States v. Elliott, 266 F.Supp. at 326. The showing of minimal numbers of prosecutions does not establish an abandonment of the State's laws and an irrational revival of them here. "[M]ere failure to prosecute other offenders is no basis for a finding of denial of equal protection." United States v. Blitstein, 626 F.2d 774, 782 (10th Cir.1980), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); see also United States v. Salazar, 720 F.2d 1482, 1487 (10th Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); United States v. Dukehart, 687 F.2d 1301, 1303 (10th Cir.1982); United States v. Amon, 669 F.2d 1351, 1355-56 (10th Cir.1981), cert. denied, 459 U.S. 825, 102 S.Ct. 57, 74 L.Ed.2d 61 (1982). Selectivity in the enforcement of laws is subject to constitutional constraints. Nevertheless, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Amon, 669 F.2d at 1355.
 
 III
 Conclusion
 
 22
 In sum, we find no error in the conclusions of the district court and uphold the summary judgment on the merits for the defendants, except as to the United States. In the case of the United States, the judgment in its favor was grounded on the same reasoning applied elsewhere in the court's opinion, namely that no violation of any constitutional rights was established. With that conclusion we agree, but more fundamentally, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed.2d 1058 (1941), and there is no jurisdictional grant with respect to this controversy as to the United States.[11]
 
 
 23
 Accordingly, we vacate the order of joinder of the United States. As thus modified, the judgment is in all respects affirmed.
 
 
 24
 MODIFIED AND AFFIRMED.
 
 
 
 *
 The Honorable Frank H. Seay, Chief Judge of the United States District Court for the Eastern District of Oklahoma, sitting by designation
 
 
 [1]
 The Utah Constitution provides in pertinent part:
 The following ordinance shall be irrevocable without the consent of the United States and the people of this State:
 [Religious toleration--Polygamy forbidden]
 FIRST:--Perfect toleration of religious sentiment is guaranteed. No inhabitant of this State shall ever be molested in person or property on account of his or her mode of religious worship; but polygamous or plural marriages are forever prohibited.
 Utah Const. art. III; see also Utah Code Ann. Sec. 76-7-101 (1978) (bigamy is a felony of the third degree).
 
 
 [2]
 The Utah Enabling Act provided in part:
 An Act To enable the people of Utah to form a constitution and state government, and to be admitted into the Union on an equal footing with the original States.
 Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the inhabitants of all that part of the area of the United States now constituting the Territory of Utah, as at present described, may become the State of Utah, as hereinafter provided.
 ....
 First. That perfect toleration of religious sentiment shall be secured, and that no inhabitant of said State shall ever be molested in person or property on account of his or her mode of religious worship: Provided, That polygamous or plural marriages are forever prohibited.
 Act of July 16, 1894, ch. 138, 28 Stat. 107, 108 (emphasis in original).
 
 
 [3]
 In Coyle, a provision in Oklahoma's Enabling Act required the state capital to be originally located in Guthrie, Oklahoma. The second section of the Enabling Act, pertaining to Oklahoma, provided in part that:
 The capital of said State shall temporarily be at the city of Guthrie, and shall not be changed therefrom previous to Anno Domini Nineteen Hundred and Thirteen, but said capital shall after said year be located by the electors of said State at an election to be provided for by the legislature.
 221 U.S. at 564, 31 S.Ct. at 689.
 On June 11, 1910, the question of location of the state capital was submitted to a popular vote.
 Once it had become clear that a majority of the voters of the state wanted the capital at Oklahoma City, the Governor [Charles N. Haskell], who was at that time in Tulsa, telegraphed his secretary, W.B. Anthony, to pack up the great seal and remove it to Oklahoma City while he himself chartered a special train to take him to that place. In consequence, the people of Oklahoma City found to their considerable surprise that they were suddenly in possession of the state government.
 E. Dale & M. Wardell, History of Oklahoma 324 (1948); see also I. Hurst, The 46th Star: A History of Oklahoma's Constititional Convention and Early Statehood 129-34 (1957).
 After the capital was moved to Oklahoma City, property owners in Guthrie brought suit. Coyle 221 U.S. at 563, 31 S.Ct. at 688-689. The Supreme Court held that the Enabling Act could not prevent the State from moving its capital, stating:
 Has Oklahoma been admitted upon an equal footing with the original States? If she has, she by virtue of her jurisdictional sovereignty as such a State may determine for her own people the proper location of the local seat of government. She is not equal in power to them if she cannot.
 221 U.S. at 579, 31 S.Ct. at 695.
 
 
 [4]
 Utah's laws prohibiting polygamy remain the current law of Utah. See Utah Const. art. III; Utah Code Ann. Sec. 76-7-101 (1978) (defining bigamy and declaring it a third degree felony)
 
 
 [5]
 The State defendants in their memorandum in support of the motion for summary judgment maintained that because Congress in Utah's Enabling Act required Utah to prohibit polygamy, there is "no indication whatsoever that the Utah Legislature has ever, since statehood was achieved in 1896, attempted to make the fundamentally sociological judgment of whether or not monogamous marriage is empirically superior to polygamy." II R. 359-60. In addition, counsel for the State of Utah stated that:
 As nearly as I can determine at this point, Utah has never seriously considered on a policy basis whether these particular laws [prohibiting polygamy] are wise or not. Utah has not had occasion, because of the federal mandate reflected in the Constitution, to give public policy consideration to these particular issues. Utah has followed without question, as near as I can determine, the mandate of the federal government to maintain this prohibition as a part of its price for statehood.
 VI R. 6.
 
 
 [6]
 In support of his argument that Reynolds is not controlling, plaintiff cites two authorities which question Reynolds. Wisconsin v. Yoder, 406 U.S. at 247, 92 S.Ct. at 1549 (Douglas, J., dissenting in part) (noting that Yoder opens way to give religion a broader base than it has ever enjoyed and even promises that in time Reynolds will be overruled); Freeman, A Remonstrance for Conscience, 106 U.Pa.L.Rev. 806, 822-26 (1958). See also L. Tribe, American Constitutional Law 853-54 (1978) (suggesting that after Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), Reynolds may be a candidate for reconsideration); but cf. id. at 946 & n. 19A (suggesting that it is unclear whether the social interest in protecting and strengthening marriages can sustain a per se criminal prohibition on extramarital sexual contacts by married persons, but noting that a prohibition on polygamy seems more secure)
 
 
 [7]
 After Reynolds, though before Yoder, the Supreme Court upheld Mann Act convictions for transporting at least one plural wife across state lines either to cohabit with her or to aid another person in such a project, despite a challenge based on the Free Exercise Clause. See e.g., Cleveland v. United States, 329 U.S. 14, 20, 67 S.Ct. 13, 16, 91 L.Ed. 12 (1946). See also Davis v. Beason, 133 U.S. 333, 342-44, 10 S.Ct. 299, 300-01, 33 L.Ed. 637 (1890) (affirming denial of writ of habeas corpus for petitioner convicted of falsely swearing, when registering to vote, that he did not teach, advise, counsel or encourage anyone to commit bigamy or polygamy)
 In State v. Barlow, 107 Utah 292, 153 P.2d 647 (1944), the Utah Supreme Court rejected the defendants' free exercise challenge and affirmed their convictions for cohabitating with more than one person of the opposite sex. The Supreme Court, citing Davis v. Beason, supra, and Reynolds v. United States, supra, dismissed the defendants' appeal for want of a substantial federal question. 324 U.S. 829, 65 S.Ct. 916, 89 L.Ed. 1396 (1945) (per curiam). The Court has stated that a dismissal of an appeal on the ground that a substantial federal question is lacking is "a ruling on the merits, and therefore is entitled to precedential weight." Caban v. Mohammed, 441 U.S. 380, 390 n. 9, 99 S.Ct. 1760, 1767 n. 9, 89 L.Ed.2d 1396 (1979); see also Hicks v. Miranda, 422 U.S. 332, 344-45 & n. 14, 95 S.Ct. 2281, 2289-90 n. 14, 45 L.Ed.2d 223 (1975). The Court, however, has indicated that a dismissal for lack of a substantial federal question "is not entitled to the same deference given a ruling after briefing, argument, and a written opinion." Caban v. Mohammed, 441 U.S. at 390 n. 9, 99 S.Ct. at 1767 n. 9; see also Edelman v. Jordan, 415 U.S. 651, 671, 94 S.Ct. 1347, 1359-60, 39 L.Ed.2d 662 (1974). See generally 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 4014, at 638-39 (1977); Comment, The Precedential Weight of a Dismissal by the Supreme Court for Want of a Substantial Federal Question: Some Implications of Hicks v. Miranda, 76 Colum.L.Rev. 508 (1976).
 
 
 [8]
 Many of the laws of the State of Utah are premised upon monogamy. See, e.g., Utah Code Ann. Secs. 30-1-27, 30-1-28 (1976) (limiting right of individual to marry who is under a prior obligation to support minor child or children); id. Sec. 30-1-30 (1976) (state policy of increasing possibility that couples will have stable marriage by providing and encouraging use of premarital counseling for those under 19 and those who have been previously divorced); id. Sec. 30-2-9 (1976) (family expenses and education of children chargeable upon property of both husband and wife); id. Sec. 30-2-10 (Supp.1983) (neither husband nor wife can remove the other or their children from the homestead without consent of the other unless the owner provides suitable alternate homestead); id. Sec. 75-2-102 (1978) (surviving spouse's intestate share); id. Sec. 75-2-201 (1978) (surviving spouse's right to elective share); id. Sec. 75-2-301 (1978) (rights of surviving spouse who is not provided for in will and was married after execution of will); id. Sec. 75-2-401 (Supp.1983) (surviving spouse's homestead allowance); id. Sec. 75-3-203 (Supp.1983) (outlining surviving spouse's priority among other persons seeking appointment as personal representative during probate)
 
 
 [9]
 See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (woman's right to abortion); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (married couple's right to use contraceptives); Doe v. Duling, 603 F.Supp. 960 (E.D.Va.1985) (constitutional right of privacy prevents the state from criminalizing the non-prostitutional heterosexual activities of two unmarried consenting adults when such activities occur in privacy of home), appeal docketed, No. 85-1326 (4th Cir. March 26, 1985)
 
 
 [10]
 In our Circuit, see, e.g., Colo.Rev.Stat. Sec. 18-6-201 (1978); Kan.Stat.Ann. Sec. 21-3601 (1981); N.M.Stat.Ann. Sec. 30-10-1 (1978); Okla.Stat.Ann. tit. 21, Secs. 881-884 (West 1983); Utah Code Ann. Sec. 76-7-101 (1978); Wyo.Stat. Sec. 6-4-401 (1983). See generally H. Clark, The Law of Domestic Relations in the United States 60-66 (1968)
 
 
 [11]
 On motion of the State, the district court ordered the United States joined as a party because of the challenge to the constitutionality of the Enabling Act, finding that the Government's presence was necessary and that it could properly be joined under Rule 19(a), Fed.R.Civ.P.; even though the Government might not be a necessary party in the strict sense, its presence was appropriate, citing 28 U.S.C. Sec. 2403, inter alia. 585 F.Supp. at 1136. However, the Government did not seek intervention as it might have under Sec. 2403, and instead challenged the joinder of the Government in the district court. This position is maintained by the Government on appeal. We see no jurisdictional basis for the joinder of the United States since it has not sought to intervene
 The State of Utah argues vigorously that the Eleventh Amendment bars plaintiff's action against the State and the State officials, and that this position was not waived below. The district court said that the continued presence of the State was "with its acquiescence," and cited statements of counsel to support that observation. 585 F.Supp. at 1133-34 & n. 5. It is true, however, that a State's consent to federal court jurisdiction must be "unequivocally expressed." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, ---, 104 S.Ct. 900, 907, 79 L.Ed.2d 67, 77 (1984). Since the particular disposition here can have no practical effect on the State appellees in light of our conclusion on the merits, we need not attempt to decide this matter.