798 P.2d 1360

**Samuel S. BARLOW,**
**Petitioner–Appellee,**

**v.**

**John A. BLACKBURN, Carol Brown, Robert K. Corbin, Clarence W. Dupnik, Sam Lewis, Ralph Milstead, Joe Richards, Peter Ronstadt, Donald L. Skousen, Philip Lee Severson, and A. Wade Smith, members of and constituting the Arizona Law Enforcement Officer Advisory Council (ALEOAC), and M.L. Risch, ALEOAC Business Manager, Respondents–Appellants.**

No. 1 CA–CIV 88–529.

Court of Appeals of Arizona, Division 1, Department C.

April 3, 1990.

Review Denied Oct. 31, 1990.*

* Gordon, C.J., and Cameron, J., of the Supreme Court, recused themselves and did not participate in the determination of this matter; Fernandez, C.J., and Livermore, V.C.J., of the Court of Appeals, Division Two, sat in their stead.

**352**

Charles A. Ditsch and Marc C. Cavness, Phoenix, for petitioner-appellee.

Robert K. Corbin, Atty. Gen. by William S. Jameson, Jr., Asst. Atty. Gen., Phoenix, for respondents-appellants.

## OPINION

McGREGOR, Judge.

Appellant Arizona Law Enforcement Officer Advisory Council (ALEOAC) appeals from the trial court's order enjoining ALE-OAC from conducting administrative proceedings to consider revoking or suspending the certified law enforcement officer status of appellee Samuel S. Barlow (Barlow). The issue on appeal is whether the right to religious freedom guaranteed by the first amendment to the United States Constitution and the Arizona Constitution prohibits ALEOAC from considering whether Barlow's certification to serve as a peace officer should be revoked or suspended because his open practice of polygamy "tend[s] to disrupt, diminish or otherwise jeopardize public trust and fidelity with regard to the law enforcement profession." A.A.C. R13–4–07(A)(6). We hold that ALEOAC may proceed with the administrative hearing and reverse the judgment of the trial court.

### I.

Barlow served as a deputy sheriff for Mohave County, Arizona, from 1966 to 1985. From 1985 to the present, Barlow has been deputy town marshal for Colorado City, Arizona. In accepting that position, Barlow took an oath to support the Constitution of the United States and the constitution and laws of the State of Arizona.[1]

Colorado City, previously known as Short Creek, is a small community in northern Arizona that adjoins the city of Hilldale, Utah, at the Utah/Arizona border. Many of the residents of these two communities are members of the Fundamentalist Church of Jesus Christ of Latter Day Saints (Fundamentalist Mormon Church). Fundamentalist Mormons believe that their religion requires the practice of polygamy. Pursuant to the teachings of the Fundamentalist Mormon Church, a man enters into one licensed marriage valid under the laws of Arizona. With the permission of his legal wife, the man then takes one or more "plural wives" in permanent relationships that

---

1. The oath of office, as prescribed by A.R.S. § 38–231, states:

   I, Samuel S. Barlow, do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution and laws of the State of Arizona; that I will bear true faith and allegiance to the same, and defend them against all enemies, foreign and domestic, and that I will faithfully and impartially discharge the duties of the office of Reserve Police Officer according to the best of my ability, so help me God (or I do so affirm).
   /s/ Samuel S. Barlow

the Fundamentalist Mormon Church recognizes as "celestial marriages."

Like many other Colorado City residents, Barlow is a member of the Fundamentalist Mormon Church. In accordance with his religious beliefs, Barlow practices polygamy. Barlow's family consists of one legal wife, two plural wives, and thirty-six children by these relationships.

## II.

On March 17, 1987, ALEOAC[2] voted to consider revocation of Barlow's status as a certified law enforcement officer pursuant to A.A.C. R13–4–07(A)(6)[3] which states:

> Each of the following constitutes cause for the Council to revoke, refuse or suspend certified status of any person as a peace officer, including a reserve peace officer.
>
> ....
>
> 6. Any conduct or pattern of conduct that would tend to disrupt, diminish or otherwise jeopardize public trust and fidelity with regard to the law enforcement profession.

As a specific ground of misconduct, ALEOAC alleged that Barlow

> [o]penly admitted the practice of polygamy in Arizona having three wives and have [sic] sired 36 children; and whether such conduct violates your oath of office.

On March 10, 1988, Barlow filed a special action in the Maricopa County Superior Court, requesting that the court (1) enjoin ALEOAC from considering the revocation, refusal, or suspension of Barlow's certification on account of his practice of polygamy; (2) order ALEOAC to dismiss the pending administrative proceedings; and (3) award Barlow his attorneys' fees and costs. Barlow argued that the free exercise of religion clause of the first amendment prevents ALEOAC from inquiring into or threatening to revoke his peace officer certification because of his practice of polygamy.

The trial court concluded that the state could enforce Arizona's constitutional prohibition of polygamy only when doing so would not interfere with genuine religious practices. The court also found that ALEOAC failed to show a compelling state interest sufficient to outweigh Barlow's first amendment right to religious freedom. The court ordered ALEOAC to dismiss the pending administrative proceedings against Barlow and to reimburse Barlow for his attorneys' fees and costs.

ALEOAC filed a timely notice of appeal in this court. We have jurisdiction pursuant to A.R.S. §§ 12–120.21 and 12–2101.

## III.

On appeal, ALEOAC argues that the free exercise clause of the United States Constitution does not prohibit it from considering whether the effects of Barlow's practice of polygamy justify revoking or suspending his peace officer certification. Barlow urges this court to affirm the decision of the trial court on the ground that ALEOAC's proposed action violates his right to the free exercise of his religion. Additionally Barlow argues that Arizona's constitutional prohibition of polygamy cannot support the proposed revocation proceedings because (1) the anti-polygamy clause conflicts with Arizona's "perfect toleration of religion" clause; (2) the anti-polygamy clause does not express the state's public policy; and (3) the anti-polygamy clause is void under the "equal footing" doctrine. We first address Barlow's contention that Arizona's anti-polygamy clause is invalid because, if Barlow is correct, we need not reach the free exercise argument.

### A. The Arizona Constitution: Religious Freedom and Polygamy

The Arizona Constitution, which Barlow swore to uphold, expressly forbids polygamous or plural marriages and polygamous cohabitation. Ariz. Const. art. XX, par. 2.

---

2. The legislature established ALEOAC in 1968. *See* A.R.S. § 41–1821. ALEOAC's duties include prescribing reasonable minimum qualifications for peace officers and constantly reviewing those standards. A.R.S. § 41–1822.3. Barlow does not dispute ALEOAC's authority to revoke, refuse or suspend the certified status of a peace officer.

3. ALEOAC regulations were renumbered on March 31, 1989. The text of A.A.C. R13–4–07(A)(6) is now found at A.A.C. R13–4–109(A)(8).

Barlow concedes that his practice of polygamy is contrary to that constitutional provision. He argues, however, that the anti-polygamy provision is invalid and thus cannot provide a basis for the proposed administrative proceeding. We disagree.

■ Barlow first maintains that the anti-polygamy clause directly conflicts with Arizona's "perfect toleration of religion" clause, which provides:

Perfect toleration of religious sentiment shall be secured to every inhabitant of this State, and no inhabitant of this State shall ever be molested in person or property on account of his or her mode of religious worship, or lack of the same.

Ariz. Const. art. XX, par. 1. The anti-polygamy clause, which immediately follows the perfect toleration clause, provides:

Polygamous or plural marriages, or polygamous co-habitation, are forever prohibited within this State.

Ariz. Const. art. XX, par. 2.

The two provisions directly conflict only if we assume the conclusion that Barlow urges, i.e., that the perfect toleration clause precludes the prohibition against polygamy. When constitutional provisions appear to conflict, however, this court must construe each provision to harmonize it with others "so that the intent of the framers may be ascertained and carried out and effect given to the instrument as a whole." *State v. Osborne,* 14 Ariz. 185, 204, 125 P. 884, 892 (1912).

In this instance, we can harmonize and give effect to both paragraphs one and two of Article XX. The juxtaposition and contemporaneous approval of the two provisions indicate that the framers of our constitution did not intend the perfect toleration clause to protect the practice of polygamy. Barlow has pointed to no authority that suggests that the framers were unaware of the combined effect of these two clauses or intended to approve plural marriages if based upon religious beliefs.

**4.** Arizona does prohibit bigamous marriages. A.R.S. § 13–3606. Because Barlow participates in only one licensed marriage, the state con-

Furthermore, the Arizona Constitution was drafted and adopted subsequent to the United States Supreme Court's decision in *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1879). In *Reynolds,* the Court refused to extend the first amendment guarantee of religious freedom to the practice of polygamy by a member of the Church of Jesus Christ of Latter Day Saints. 98 U.S. at 167. Barlow proposes no basis for concluding that the drafters intended to extend more protection to the practice of polygamy under the Arizona Constitution, which expressly forbids polygamy, than that provided under the United States Constitution, which does not directly address the practice.

■ Barlow next argues that the constitutional prohibition against polygamy does not express the public policy of this state because the legislature has never enacted statutes imposing a criminal penalty for the practice of polygamy.[4] The constitution itself, however, *is* the expression of the will of the people; no legislative enactment is necessary to validate a constitutional expression of public policy:

The sovereign people speak in the language of their constitution. Their will expressed in the constitution is the will of the sovereign itself....

....

[N]o other power than the people can superadd other limitations; neither can any other power than the people strike from the fundamental law any limitations which the people have prescribed therein.

....

The sovereign people, in whom is vested all governmental power, have spoken in their organic law, and their mandate, so expressed, must be enforced by the courts....

*State v. Osborne,* 14 Ariz. at 191, 192, 125 P. at 887. *See also Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 378, 710 P.2d 1025, 1033 (1985) (state's constitution and statutes articulate public policy and "embody the public conscience of the people of this state").

cedes, at least for this action, he has not violated that criminal statute.

Barlow further argues that the constitutional prohibition of polygamy is void under the equal footing doctrine, reasoning that Arizona included the anti-polygamy provision solely to satisfy the requirements of the Enabling Act[5] in order to gain statehood. We reject that argument.

■ The "equal footing" doctrine reflects the fact that, although Congress has the power to admit new states into the Union, *see* U.S. Const. art. 4, § 3, its power is not without limitation. Congress must admit new states on an equal footing with the other states and may not deprive a newly-admitted state "of any of the power constitutionally possessed by other States, as States, by reason of the terms in which the acts admitting them to the Union have been framed." *Coyle v. Smith,* 221 U.S. 559, 570, 31 S.Ct. 688, 691, 55 L.Ed. 853, 859 (1911).

■ Barlow argues that, because the Enabling Act required Arizona to include an anti-polygamy provision, Arizona lacked the power possessed by other states to legitimize the practice of plural marriage by a vote of their legislatures. Barlow's argument is not persuasive. The Supreme Court's decision in *Coyle* established that, whatever the limitations imposed by the Enabling Act, Arizona has had full power since statehood to repeal the anti-polygamy provision. 221 U.S. at 579, 31 S.Ct. at 695. Hence, even if the Enabling Act resulted

from unlawful coercion, a premise for which Barlow provides no support, Arizona could have repealed any portion of the Act once it achieved statehood. Arizona has not done so. Indeed, the fact that the anti-polygamy clause remains part of our constitution indicates that, contrary to Barlow's argument, the policy there expressed remains the will of the people of this state.[6] *See also Potter v. Murray City,* 760 F.2d 1065 (10th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985) (similar Utah Enabling Act upheld against identical challenge by plaintiff who practiced plural marriage).

We hold that Arizona's constitutional prohibition against polygamy is valid and that the Arizona Constitution does not prevent ALEOAC from proceeding with an administrative hearing.

B. The ˋFree Exercise Clause of the First Amendment to the United States Constitution

Having concluded that Arizona's anti-polygamy clause is valid, we must next consider whether the free exercise clause of the first amendment to the United States Constitution prohibits ALEOAC from considering the potential effect of Barlow's practice of polygamy upon his peace officer certification. In making that analysis, we first determine whether the practice of polygamy falls within the area of constitutional protection. If so, and if the challenged state action burdens or interferes with Barlow's free exercise rights, we must determine whether the challenged action is

---

5. The Enabling Act provides in part:

And said convention shall provide, by an ordinance irrevocable without the consent of the United States and the people of said State—First. That perfect toleration of religious sentiment shall be secured, and that no inhabitant of said state shall ever be molested in person or property on account of his or her mode of religious worship; **and that polygamous or plural marriages, or polygamous cohabitation,** and the sale, barter, cohabitation, and the sale, barter or giving of intoxicating liquors to Indians, and the introduction of liquors into Indian country **are forever prohibited.**

Enabling Act of June 20, 1910, c. 310, 36 U.S. Stat. 557, 569 (emphasis added). The corresponding provisions in the Arizona Constitution, article XX, commonly are referred to as the "irrevocable ordinance."

6. The history of the judicial recall provision of the Arizona Constitution typifies Arizona's power to amend its constitution despite the federal government's disapproval. *See* Ariz. Const. art. 8, pt. 1, § 1. The Arizona Constitution, as adopted by the territorial voters on February 9, 1911, included a provision subjecting members of the judiciary to recall. President William H. Taft opposed judicial recall, however, and vetoed the joint resolution of Congress providing for Arizona's statehood. 62 Cong.Rec. 3964–66 (1912). After Arizona deleted the judicial recall provision, President Taft approved the constitution. Immediately following Arizona's admission to statehood, Arizona voters reinstated the judicial recall provision in the constitution. *See generally* Bakken, *The Arizona Constitutional Convention of 1910,* 1978 Ariz.St.L.J. 1, 8–10.

the least restrictive means of achieving an unusually important or compelling state interest. *See Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Marriage of Gove*, 117 Ariz. 324, 572 P.2d 458 (App.1977).

The argument that government may not regulate the religiously motivated practice of polygamy is not new. For more than 100 years, the United States Supreme Court has refused to extend the protection of the free exercise clause to the practice of polygamy. In 1879, the Court affirmed the felony conviction of a member of the Church of Jesus Christ of Latter Day Saints for practicing polygamy in accord with religious beliefs but in violation of federal law. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879). The *Reynolds* Court reasoned that "Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in violation of social duties or subversive of good order." 98 U.S. at 164. Indeed, the Court concluded, to excuse Reynolds' practice of polygamy on the basis of his religious belief would be to

> make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could only exist in name under such circumstances.

98 U.S. at 167.

Although the Court has modified the strict belief/action dichotomy set out in *Reynolds* for testing whether a burden upon the free exercise of religion is justified, *see Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the underlying reasoning of *Reynolds* remains valid. *See, e.g., Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 68 n. 15, 93 S.Ct. 2628,

2641 n. 15, 37 L.Ed.2d 446, 463 n. 15 (1973) ("[s]tatutes making bigamy a crime surely cut into an individual's freedom to associate, but few today seriously claim such statutes violate the First Amendment or any other constitutional provision").[7] In a recent decision, the Court again indicated that plural marriages fall outside those practices that can make a legitimate claim to first amendment protection:

> We have held that bigamy may be forbidden, even when the practice is dictated by sincere religious convictions. *Reynolds v. United States*, 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1879). If a bigamist may be sent to jail despite the religious motivation for his misconduct, surely a State may refuse to pay unemployment compensation to a marriage counselor who was discharged because he or she entered into a bigamous relationship. The protection that the First Amendment provides to *"legitimate* claims to the free exercise of religion,"* see Hobbie [v. Unemployment Appeals Comm'n of Florida ]*, 480 U.S. [136], at 142, 107 S.Ct., [1046], at 1050 [94 L.Ed.2d 190 (1987)] (emphasis added), does not extend to conduct that a State has validly proscribed.

*Employment Division, Dept. of Human Resources v. Smith*, 485 U.S. 660, 671, 108 S.Ct. 1444, 1451, 99 L.Ed.2d 753, 764 (1988) (emphasis in original).

We need not decide whether the protection of the free exercise clause ever extends to the practice of polygamy, however, for we find that, assuming that Barlow's practice of polygamy is constitutionally protected, Arizona's compelling state interest, as described below, justifies an infringement upon Barlow's religiously-motivated conduct.

---

7. Courts continue to cite *Reynolds* as providing a viable example of a state interest that outweighs an individual's right to free exercise of religion. *See, e.g., Bob Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526,

32 L.Ed.2d 15 (1972); *Potter v. Murray City*, 760 F.2d 1065 (10th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985); *United States v. Carroll*, 567 F.2d 955 (10th Cir.1977); *United States v. Dickens*, 695 F.2d 765 (3rd Cir. 1982), *cert. denied*, 460 U.S. 1092, 103 S.Ct. 1792, 76 L.Ed.2d 359 (1983).

Although the first amendment and the Arizona Constitution absolutely protect religious beliefs, the protection extended to religiously-motivated conduct is not absolute, and not all burdens on religion are unconstitutional. *See, e.g., Bob Jones University v. United States,* 461 U.S. 574, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983); *United States v. Lee,* 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982); *Marriage of Gove,* 117 Ariz. 324, 572 P.2d 458 (App.1977). The state may justify a burden upon the practice of a sincerely held religious belief by showing that the regulation is essential to accomplish a compelling state interest. *Bob Jones University v. United States,* 461 U.S. at 603, 103 S.Ct. at 2034; *Wisconsin v. Yoder,* 406 U.S. at 214, 92 S.Ct. at 1532; *State v. Whittingham,* 19 Ariz.App. 27, 29, 504 P.2d 950, 952 (1973), *review denied,* 110 Ariz. 279, 517 P.2d 1275 (1974), *cert. denied,* 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 667 (1974).

The state does not dispute that Barlow's practice of plural marriage is based upon a sincere religious belief or that the outcome of the proposed administrative proceedings may place a burden on the free exercise of his religion. Before the state may conduct a hearing, therefore, it must demonstrate a sufficiently compelling interest to justify imposing that burden. We find that the state has a compelling interest in enforcing reasonable qualifications for its peace officers.[8]

Law enforcement officers hold a unique position within society. The state entrusts them with power to enforce the laws upon which society depends and demands much from them:

> A police officer is the most conspicuous representative of government, and to the majority of the people he is a symbol of stability and authority upon whom they can rely.... Since the conduct of an officer, on or off duty, may reflect upon the Department, an officer must at all times conduct himself in a manner which does not bring discredit to himself, the Department, or the City.

*Civil Service Commission of Tucson v. Livingston,* 22 Ariz.App. 183, 187, 525 P.2d 949, 953 (1974), *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975).

The state surely has an overriding interest in assuring that law enforcement officers fulfill reasonable certification requirements, which ALEOAC has defined as requiring conduct that, in essence, evidences respect for the very laws and constitution that peace officers have sworn to uphold. The incompatibility between a public flouting of the constitution and the duties of a peace officer requires the state to address such problems when they arise. *See generally Matter of Marquardt,* 161 Ariz. 206, 778 P.2d 241 (1989) (judge disciplined for conduct that violated his oath of office and brought the judicial office into disrepute).

The authority of the state to regulate the conduct of public employees is unquestioned, even though the first amendment might prohibit the same regulation if imposed upon the general public. Although the government may not unreasonably compel its employees to relinquish first amendment rights as a condition of employment, some restrictions on the exercise of those rights are justifiable. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In *Pickering,* for example, the school board dismissed a public schoolteacher who submitted letters critical of the school board to local newspapers. The school board justified its action by asserting that the letters were detrimental to the efficient operation and administration of the schools of the district. In considering the teacher's argument that the school board's dismissal violated his first amendment rights, the Court stated:

> [I]t cannot be gainsaid that the State has interests as an employer in regulating

---

8. Barlow does not challenge the "reasonable minimum qualifications" prescribed by ALEOAC pursuant to A.R.S. § 41–1822.3. The issue before us is whether ALEOAC can apply to Barlow the standard prescribed for continued certification as a peace officer that Barlow's conduct allegedly has violated.

the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

391 U.S. at 568, 88 S.Ct. at 1734.

The state's compelling interest in regulating the conduct of its employees, even when doing so burdens first amendment rights, is reflected in other areas as well. Federal and state governments have a compelling interest sufficient to justify restricting their employees' public speech and participation in partisan politics, a restriction that could not be imposed upon members of the public. *See, e.g., Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Matter of Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485, *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980).

By practicing polygamy, Barlow has chosen to disregard the Arizona Constitution's proscription of polygamous marriage and cohabitation and his oath to uphold the constitution. That conduct may be sufficient to permit ALEOAC to conclude that Barlow does not meet the reasonable minimum qualifications required for peace officer certification. The state's interest in enforcing its certification requirements overrides Barlow's interest in the practice of polygamy, at least to the extent of justifying the administrative hearing that is the subject of this appeal.[9]

The final question for our consideration is whether the state has selected the least restrictive means to achieve its objective. Barlow's practice of polygamy does not necessarily affect his peace officer's certifi-

cation. The purpose of the hearing before ALEOAC is to determine whether Barlow's conduct tends to jeopardize public trust and fidelity with respect to the law enforcement profession. If so, it is for ALEOAC, in the first instance, to determine the effect such a showing should have upon Barlow's certification. Barlow does not argue that the state could utilize any less restrictive means to achieve its objective. We express no opinion as to the likelihood that the state can make the showing required to justify suspension or revocation of Barlow's certification.

## IV.

For the foregoing reasons, we reverse the judgment of the trial court.

CONTRERAS, P.J., concurs.

GERBER, Judge, specially concurring.

I write specially first to underscore that, in my view, the essence of this decision is simply to affirm ALEOAC's right, on these facts, to conduct the Barlow administrative hearing and secondly, to dispel any seeming endorsement of the thrice-cited ALEOAC test (whether the conduct "would tend to disrupt, diminish or otherwise jeopardize public trust and fidelity with regard to the law enforcement profession"). Mention of this test, in my view, is no judicial endorsement of its workability.

---

9. The state also contends that it has a compelling interest, evidenced by Arizona's statutory scheme, in preserving monogamous relationships. *See generally Potter v. Murray City,* 760 F.2d 1065 (10th Cir.1985) (state has a compelling interest in and commitment to domestic relations system based exclusively upon practice of monogamy). Because our holding rests upon the state's compelling interest in assuring that law enforcement officers meet reasonable qualifications, we need not reach that argument.